2022-1161

IN THE

# United States Court of Appeals for the Federal Circuit

ACQUISITION 362, LLC DBA STRATEGIC IMPORT SUPPLY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in
Case No. 1:20-cv-03762, Slip Op. No. 21-120 (Sept. 20, 2021)
Judge Stephen Alexander Vaden

**OPENING BRIEF OF PLAINTIFF-APPELLANT ACQUISITION 362, LLC**

Heather L. Marx
Thomas G. Wallrich
**Cozen O'Connor**
33 South Sixth Street
Suite 3800
Minneapolis, MN 55402
(612) 260-9000

*Counsel for Plaintiff-Appellant Acquisition 362, LLC dba Strategic Import Supply*

March 4, 2022

# Certificate of Interest





## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1161

**Short Case Caption** Acquisition 362, LLC v. US

**Filing Party/Entity** Acquisition 362, LLC

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/30/2021

Signature: /Heather L. Marx/

Name: Heather L. Marx

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Acquisition 362, LLC dba Strategic Import Supply | | David and Lily Penn, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS


**Page**

STATEMENT OF RELATED CASES ....................................................... 1

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE .............................................................. 2

I. Statement of Facts ......................................................................... 2

II. Statement of Proceedings Before the CIT ........................................ 6

SUMMARY OF THE ARGUMENT ....................................................... 11

I. The CIT Had Jurisdiction Under 28 U.S.C. §1581(a) AND 19 C.F.R. § 174.12(e)(2). ........................................................................ 12

II. The CIT Erred in Failing to Consider Newly-Discovered Evidence and Alternative Jurisdiction Under 28 U.S.C. §1581(i). ................................ 13

LEGAL ARGUMENT ....................................................................... 15

I. Standard of Review ....................................................................... 15

II. The CIT Possesses Subject Matter Jurisdiction Under Section 1581(a) to Address A362's Claims. .......................................................... 15

III. Alternatively, the CIT Possesses Jurisdiction Under Section 1581(i) to Address A362's Claims. .......................................................... 21

A. If the Court Refuses to Find Jurisdiction Under Section 1581(a), A362 Establishes that that Section Provides a Manifestly Inadequate Remedy. ................................................................ 24

B. CBP's Actions were Unreasonable, Arbitrary, and Capricious, as Confirmed by CBP's Own Reversal in a Subsequent Determination, Providing Jurisdiction Under 28 U.S.C. § 1581(i)(1)(D). ................. 26

CONCLUSION AND RECOMMENDED APPELLATE REMEDY .................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baylis Bros. Co. v. United States*,
75 Cust. Ct. 89, 400 F.Supp. 940 (1975) .......... 18, 25

*C.R. Bard, Inc. v. Schwartz,*
716 F.2d 874 (Fed. Cir. 1983) .......... 15

*Cedars-Sinai Med. Ctr. v. Watkins*,
11 F.3d 1573 (Fed. Cir. 1993) .......... 29

*Chemsol, LLC v. United States*,
755 F.3d 1345 (Fed. Cir. 2014) .......... 15

*Ford Motor Co. v. United States*,
688 F.3d 1319 (Fed. Cir. 2012) .......... 22

*Hartford Fire Ins. Co. v. United States*,
544 F.3d 1289 (Fed. Cir. 2008) .......... 24

*Hutchison Quality Furniture, Inc. v. United States*,
827 F.3d 1355 (Fed. Cir. 2016) .......... 15

*Inner Secrets / Secretly Yours v. United States,*
869 F.Supp. 959 (Ct. Int'l Trade 1994) .......... 24

*Int'l Custom Prods., Inc. v. United States*,
467 F.3d 1324 (Fed. Cir. 2006) .......... 24

*Interspiro USA, Inc. v. Figgie Int'l, Inc.*,
18 F.3d 927 (Fed. Cir. 1994) .......... 15

*Lowa, Ltd. v. United States*,
5 C.I.T. 81, 561 F.Supp. 441 (1983), *aff'd* 724 F.2d 121 (Fed. Cir. 1984) .......... 18, 25

*Mitsubishi Elecs. Am., Inc. v. United States,*
44 F.3d 973 (Fed. Cir. 1994) .......... 8

*Motor Vehicle Mfgs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)........................................................................26, 28, 29

*Norcal/Crosetti Foods, Inc. v. United States*,
963 F.2d 356 (Fed. Cir. 1992) ......................................................................22

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) ..............................................................26, 28

*Sunpreme Inc. v. United States*,
892 F.3d 1186 (Fed. Cir. 2018) ..............................................................15, 22

*United States v. Reliable Chem. Co.*,
66 C.C.P.A. 123, 605 F.2d 1179 (1979)....................................................18, 25

**Statutes**

19 U.S.C. § 1514(a) .......................................................................................*passim*

19 U.S.C. § 1514(c) .......................................................................................*passim*

19 U.S.C. § 1516a(b)(1)(A) .................................................................................26

19 U.S.C. § 1677g.............................................................................................19

28 U.S.C. §1295(a)(5)..........................................................................................1

28 U.S.C. §1581(a) ........................................................................................*passim*

28 U.S.C. §1581(i) .........................................................................................*passim*

28 U.S.C. § 2632 ...............................................................................................6

28 U.S.C. § 2645(c) ..........................................................................................1

**Other Authorities**

19 C.F.R. § 174.3 ..............................................................................................6

19 C.F.R. § 174.12(e).......................................................................................*passim*

19 C.F.R. § 174.13(a)(6) .....................................................................................19

19 C.F.R. § 174.14(a)....................................................................................19

80 FR 47902 (Aug. 10, 2015).....................................................................................2

82 FR 48051 (Oct. 16, 2017).......................................................................................3

84 FR 28011 (June 17, 2019)...................................................................................3, 19

Federal Rule of Appellate Procedure 4(a) ....................................................................1

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), Plaintiff-Appellant Acquisition 362, LLC dba Strategic Import Supply ("A362") is not aware of any other appeal in or from the same civil action or proceeding in the lower court that was previously before this Court or any other appellate court.

Pursuant to Federal Circuit Rule 47.5(b), A362 is also not aware of any case pending that will directly affect or be directly affected by this appeal.

## JURISDICTIONAL STATEMENT

This case arose from decisions of the U.S. Court of International Trade ("CIT") granting Defendant United States' Motion to Dismiss in case No. 1:20-cv-03762-SAV for lack of subject matter jurisdiction. Appx1-21. This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §1295(a)(5) as an appeal from a final decision of the CIT that disposed of all parties' claims.

This appeal is timely under 28 U.S.C. § 2645(c) and Federal Rules of Appellate Procedure 4(a)(1) and 4(a)(4). A362 filed its notice of appeal to this Court on November 11, 2021, within sixty days of the CIT's final judgment issued on September 20, 2021. Appx12-21.

## STATEMENT OF THE ISSUES

This case presents the following issues:

1. Whether the CIT erred as a matter of law by holding that A362's protests related to rate and refund determinations were untimely and that the CIT lacked subject matter jurisdiction pursuant to 28 U.S.C. §1581(a) when the CIT relied on the wrong statutory limitation for filing protests instead of applying the proper standard established by 19 U.S.C. § 1514(c)(3)(B) and 19 C.F.R. § 174.12(e)(2).

2. Whether the CIT erred in its refusal to reconsider the dismissal of A362's action when newly-discovered evidence demonstrated that, if subject matter jurisdiction did not lie under 28 U.S.C. §1581(a), manifestly inadequate remedies existed and established subject matter jurisdiction under 28 U.S.C. §1581(i).

## STATEMENT OF THE CASE

### I. STATEMENT OF FACTS

On August 10, 2015, Commerce issued a countervailing duty ("CVD") order regarding passenger vehicle and light truck tires from China (the "CVD Order"). *See Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 FR 47902 (Aug. 10, 2015); *see also* Appx29-31. In 2016, A362 imported several entries of passenger vehicle and

light truck tires from China that were subject to the CVD Order. Appx29-31. Upon entry, A362 deposited payment of the assessed countervailing duties at a rate of 30.61%, the rate assigned to manufacturer Shandong Zhongyi Rubber Co., Ltd. ("Zhongyi") at the time the entries were made. Appx31.

In 2017, several interested parties requested that Commerce conduct an administrative review of the CVD Order,[1] and, accordingly on October 16, 2017, Commerce published a Notice of Initiation of administrative review of the CVD Order for forty-two producers / exporters during the indicated period of review running from August 1, 2016 through July 31, 2017 (the "Period of Review"). *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 82 FR 48051 (Oct. 16, 2017). While this administrative review was ongoing, the entries made by A362 in 2016 were liquidated in October and November 2018. Appx35-36.

On June 17, 2019, Commerce issued Amended Final Results resulting from its completed administrative review of the CVD Order for the Period of Review. *See Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Countervailing Duty Administrative Review; 2016*, 84 FR 28011 (June 17, 2019) (the "Amended Final

[1] Although Zhongyi initially joined in the request for administrative review of the CVD Order, it later withdrew that individual request. Appx3.

Results"); *see also* Appx31. As a consequence of the determinations made by Commerce in the Amended Final Results, Zhongyi was assigned a lower CVD rate of 15.56% for the Period of Review (as opposed to the CVD rate of 30.61% that was assessed and paid at the time of entry). Appx31. The practical effect of the Amended Final Results was that A362 was entitled to a refund of the difference in CVD rates from the paid-in rate of 30.61% to the amended rate of 15.56%.

Following the determination of the Amended Final Results, the International Trade Administration ("ITA") issued Message No. 9184301 to CBP on July 3, 2019, instructing CBP to assess CVD liability, in relevant part, to Zhongyi at the rate of 15.56% for entries made during the Period of Review. Appx31-32. The practical effect of Message No. 9184301 was that the ITA instructed CBP to adjust the CVD entries during the Period of Review to reflect the amended rate of 15.56%. CBP was to adjust the entries during the Period of Review and issue bills at the rate of 15.56% to those who had not already paid the CVD rate (unlikely, as import duties are paid upon customs clearance), and, if the CVD rate had already been paid, issue refunds of the difference in CVD rates from the original 30.61% rate to the amended rate of 15.56%. No affirmative actions are required of A362 to receive the refunds. It is to happen within CBP's system automatically.

With the issuance of Message No. 9184301, CBP had – for the first time – instruction and authority to issue refunds due as a result of the adjustment of the CVD rate established in the Amended Final Results.

Message No. 9184301 also confirmed that the assessment of CVD on shipments or entries of merchandise affected by the Amended Final Results was subject to the provisions of section 778 of the Tariff Act of 1930, as amended. Appx61. Section 778 requires that CBP pay interest[2] on overpayments of the required amounts deposited as estimated CVD. Appx61.

The publication of the Amended Final Results on June 17, 2019 was the first notice A362 had that it was entitled to a lower CVD rate on the 2016 entries at issue. Following publication of the Amended Final Results and the issuance of Message No. 9184301, CBP was required by statute to automatically issue A362 a refund for the difference between the 30.61% CVD rate paid by A362 at the time of import and the lower 15.56% CVD rate ultimately assessed by the Amended Final Results.

When CBP decided not to issue the mandated refund required by law and required by instructions from Commerce and the ITA, A362 filed the necessary protests on December 12, 2019 and December 13, 2019 indicating its entitlement to refunds for the difference between the 30.61% CVD rate paid by A362 at the time

[2] The rate at which such interest is payable is the rate in effect under section 6621 of the Internal Revenue Code of 1954 for such period. Appx61.

of import and the lower 15.56% CVD rate ultimately assessed by the Amended Final Results (the "Protests"). Appx35-36. CBP denied A362's Protests, claiming they were untimely because they were not filed on or before May 2019 (i.e., within 180 days of the late-2018 liquidation of the entries). Appx4. Notice of the denial of the Protests was emailed by CBP to A362 on April 24, 2020.[3] Appx4.

## II. STATEMENT OF PROCEEDINGS BEFORE THE CIT

Following CBP's denial of the Protests, A362 timely commenced its action before the CIT on October 15, 2020.[4] In its Complaint, A362 asserted that the CIT had jurisdiction under 28 U.S.C. § 1581(a). Appx28. In response, Defendant claimed the CIT lacked subject matter jurisdiction under 28 U.S.C. § 1581(a) and sought to dismiss A362's action as a matter of law. Appx37-52.

[3] A summary timeline of the operative dates in this matter is as follows:

- August 10, 2015: Commerce issues the CVD Order establishing a 30.61% duty rate
- 2016: A362's payment of CVD at 30.61% duty rate upon entry of imports
- October 16, 2017: Administrative review of the CVD Order begins
- October-November 2018: A362's entries are liquidated
- May 8, 2019: 180 days elapses after A362's entries are liquidated
- June 17, 2019: Issuance of the Amended Final Results, amending CVD rates to 15.56%
- July 3, 2019: Issuance of Message No. 9184301, instructing issuance of refunds
- December 12-13, 2019: A362's Protests are filed with CBP
- April 24, 2020: CBP denies A362's Protests

[4] This filing was timely pursuant to 28 U.S.C. § 2632 and 19 C.F.R. § 174.3, because it occurred within 180 days after the date of mailing of notice of the Protests' denials.

Specifically, Defendant alleged that A362's Complaint must be dismissed pursuant to Rule 12(b)(1) of the Rules of the CIT, because the Protests filed by A362 regarding the entries at issue were untimely and, as a result, the CIT lacked the requisite subject matter jurisdiction. Appx50-51. Defendant argued that, despite the fact that the Amended Final Results did not change the assessed rate until June 17, 2019, A362 should have filed its Protests no later than May 8, 2019 (more than a month ***before*** the CVD rate changed), because that May date was 180 days after the liquidation of the entries that occurred between October 19, 2018 and November 9, 2018. Appx50-51. Defendant further argued that, because A362 did not file its Protests within 180 days of the date of liquidation (i.e., on or before May 8, 2019), the CIT lacked subject matter jurisdiction to hear A362's action. Appx50-51.

Defendant's argument in support of its motion to dismiss did not address the Amended Final Results, the issuance of Message No. 9184301, or the fact that Defendant's argument required A362 to file protests before any rate change was implemented (i.e., before there was anything to protest). Appx37-52. Defendant also failed to acknowledge the express statutory language that made A362's Protest filings timely and, instead, remained singularly (and improperly) focused on the fact that A362's Protests were filed more than 180 days following liquidation of the entries at issue. Appx50-51.

On April 21, 2021, the CIT issued an Opinion granting Defendant's motion to dismiss A362's Complaint. Appx1-11. In its Opinion, the CIT indicated that "[a]s both sides acknowledge the jurisdiction-robbing 180-day deadline to file a valid protest [pursuant to 28 U.S.C. § 1581(a) and 19 U.S.C. § 1514(a)], the dispute here is over when that 180-day time period begins." Appx8. Ultimately, the CIT granted Defendant's motion and determined the CIT lacked subject matter jurisdiction under 28 U.S.C. § 1581(a) to hear A362's action, because it believed that nothing that occurred after May 2019 restarted the 180-day deadline given that "determinations of countervailing and antidumping duty rates are not Customs decisions but rather Commerce decisions." Appx9-10, citing *Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994).

In its Order dismissing A362's action, the CIT concluded that A362's dispute was a "dispute [regarding] a determination made by Commerce" (Appx11) and that jurisdiction, if it ever existed, should have been alleged under 28 U.S.C. § 1581(c) "to challenge Commerce's imposition of countervailing duties or its determination of a countervailing duty rate…" Appx10. This conclusion both improperly misconstrued the very nature of A362's claim, which takes no issue with any rate determination or imposition of duties by Commerce, but it also failed to take into account (or even address) the plain language of 19 C.F.R. § 174.12(e),

which allows for a protest to a "decision, involving neither liquidation nor reliquidation…"

The week after the CIT issued its Order dismissing A362's action, CBP issued a decision in regard to a separate protest filed by A362 (Protest No. 160120103706), in which separate protest A362 also protested CBP's failure to issue a refund of the difference in CVD rates for tires imported from Zhongyi during the Period of Review. Appx84-95. In its decision regarding Protest No. 160120103706, CBP agreed that the entries A362 imported from Zhongyi should be assessed a rate of 15.53%, and issued A362 a refund with all applicable interest given the fact that A362 had paid a duty rate of 30.61% at the time of import. Appx94-95. Identical to the situation involving the Protests, with regard to the entry at issue in Protest No. 160120103706, A362 had no claim for refund (nor did CBP have authority to issue refunds) prior to the issuance of the Amended Final Results and the attendant Message No. 9184301 directing CBP to implement those Amended Final Results.

On May 19, 2021, A362 presented this newly-discovered evidence to the CIT as part of a motion for reconsideration of the CIT's April 21, 2021 Order. Appx70-95. In its motion for reconsideration and request for leave to amend its Complaint, A362 highlighted the fact that the CIT's April Order applied the wrong statutory deadline provision, did not consider the plain language of 19 C.F.R. § 174.12(e), and further indicated that the decision issued in regard to Protest No. 160120103706 was

newly-discovered evidence that CBP was acting in an unjust, arbitrary, and capricious manner that would now provide the CIT jurisdiction under 28 U.S.C. § 1581(i)(1)(D). Appx78-81. Specifically, A362 argued that CBP's decision in regard to Protest No. 160120103706 could be understood as CBP determining that a protest made within 180 days of the Message No. 9184301 (implementing the Amended Final Results) was not untimely and, if that is the case, then the decision in regard to Protest No. 160120103706 is directly at odds with the decision made in regard to the underlying Protests at issue in A362's Complaint. Appx77-78.

Defendant opposed A362's motion for reconsideration by urging the CIT to set aside any consideration of the newly-discovered evidence and by asserting that CBP's action in handling Protest No. 160120103706 was of no consequence to the fact that the Protests were not filed within 180 days of the date of their liquidation. Appx98-99. Defendant went on to argue that the CIT also lacked jurisdiction under 28 U.S.C. §1581(i) by asserting that the CIT's residual jurisdiction could not be invoked because A362 did not have manifestly inadequate remedies under the other provisions of § 1581. Appx98-101.

On September 20, 2021, the CIT denied A362's motion for reconsideration and leave to amend the Complaint. Appx12-21. This appeal timely followed.

## SUMMARY OF THE ARGUMENT

This case involves an error in statutory application by the CIT in its determination of whether A362's Protests were timely filed with CBP. A362 paid every cent of the CVD duty assessed when the entries at issue entered the country in 2016. It was not until June 17, 2019 that it was determined, and A362 was informed, that the CVD rate A362 had paid three years earlier was approximately double the rate that should have been charged. Accordingly, when CBP decided not to issue the refund required by law on the overpayment made by A362 (**which refund should have occurred without the need for further filings from A362**), A362 filed its Protests. Those Protests were filed, out of an abundance of caution, within 180 days of June 17, 2019, which was both the earliest date CBP arguably had authority to issue refunds, as well as the earliest date A362 could have been alleged to have notice of the CVD rate change.

If affirmed, the CIT dismissal of A362's timely action leaves A362 without a remedy, establishing precedent that requires A362 to file legally-unsustainable protests even before the CVD rate is changed and before A362 had any entitlement to a refund. That is both nonsensical in practical application and unsupported by the language of the guiding statutes, as discussed below.

## I. THE CIT HAD JURISDICTION UNDER 28 U.S.C. §1581(a) AND 19 C.F.R. § 174.12(e)(2).

In its first Opinion, the CIT concluded that it lacked subject matter jurisdiction under 28 U.S.C. § 1581(a) because of the singular fact that more than 180 days elapsed from the date of liquidation of the entries involved in A362's Protests before the Protests were filed. This conclusion is erroneous as a matter of law, because it fails to acknowledge the plain language of 19 U.S.C. §1514(c)(3) and 19 C.F.R. § 174.12(e), which provide two distinct mechanisms for calculating when a protest is timely for purposes of 28 U.S.C. §1581(a). Not only is there the traditional calculation under 19 U.S.C. §1514(c)(3)(A) and 19 C.F.R. § 174.12(e)(1) establishing that a protest is timely if filed within 180 days following liquidation, but there is also another calculation allowed under 19 U.S.C. §1514(c)(3)(B) and 19 C.F.R. § 174.12(e)(2) that confirms that a protest is also timely when it is made within 180 days of another decision that is not a decision involving either liquidation or reliquidation. *See* 19 U.S.C. §1514(c)(3); 19 C.F.R. § 174.12(e).

The CIT's rulings completely failed to examine this central argument or the plain language that provides for an alternative mechanism to obtain proper CIT jurisdiction. When properly examined, 19 C.F.R. § 174.12(e)(2) establishes, on these facts, that A362 was timely with its Protests, confirming the propriety of CIT subject matter jurisdiction under § 1581(a) for A362's refund action.

## II. THE CIT ERRED IN FAILING TO CONSIDER NEWLY-DISCOVERED EVIDENCE AND ALTERNATIVE JURISDICTION UNDER 28 U.S.C. §1581(i).

The CIT also erred when it refused to reconsider and reverse its dismissal of A362's Complaint when presented with newly-discovered evidence that subsequent actions of CBP were arbitrary and capricious in regard to examination of the arguments raised in A362's Protests. The motion for reconsideration presented the CIT with evidence that the CBP actually granted another protest made by A362 requesting a refund of CVD duties paid for the same reasons asserted in the separate Protests. That subsequent determination ran directly contrary to CBP's earlier decision regarding the Protests, supporting the argument advanced by A362 before the CIT, both in regard to A362's original jurisdictional argument and in regard to the new basis of jurisdiction alleged in the motion for reconsideration.

In denying A362's motion for reconsideration, the CIT created an illogical construct that denies importers of record relief in instances of what is now-admitted governmental misconduct in failing to return overpayments. A362 had nothing to protest within 180 days after the entries at issue were liquidated. The CVD rate had not been changed, and there was no decision by CBP or Commerce or ITA that A362 had any justiciable basis or reason to challenge. Had A362 filed a protest within the 180-day period following liquidation requesting application of a different rate, that

protest would have been a sham filing, in that A362 would not have been able to identify any new rate or any alleged basis for assessment of that unknown rate.

When the CVD rate changed, well after 180 days following liquidation, A362 took no issue with that change by Commerce, so it had no reason to lodge a protest in regard to the decision contained within the Amended Final Results. It was only when CBP decided not to implement Message No. 9184301 or provide the refunds to which A362 was automatically entitled under the Amended Final Results that A362 acted timely to request those refunds.

However, despite the fact that A362 had no sustainable basis to protest within 180 days after liquidation, the initial CIT dismissal provides A362 no avenue for relief under § 1581(a). And even when provided evidence that CBP was arbitrary and capricious in its later review of substantively-identical refund claims, the CIT also eliminated A362's ability to claim jurisdiction under § 1581(i), alleging that the § 1581(a) jurisdiction it had just denied was not a manifestly inadequate remedy. Unless A362 is allowed to utilize the grant of residual jurisdiction in § 1581(i), or the determination regarding lack of jurisdiction under §1581(a) is reversed, the culmination of these rulings truly leaves importers like A362 with ***no*** available legal remedy in cases where CVD rates are altered 180 days after liquidation, unless they want to file premature, sham claims for refunds that do not exist and cannot be paid.

On these legal arguments, A362 requests reversal of the CIT's determinations and a remand of this matter to the CIT for further proceedings.

## LEGAL ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews *de novo* the CIT's dismissal for lack of subject matter jurisdiction given this Court's "'inherent jurisdiction to determine whether a lower tribunal had jurisdiction.'" *Interspiro USA, Inc. v. Figgie Int'l, Inc.,* 18 F.3d 927, 930 (Fed. Cir. 1994) (citing *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 877 (Fed. Cir. 1983)). *See also Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (reviewing CIT's jurisdictional issue without deference); *Hutchison Quality Furniture, Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016) (reviewing CIT's subject matter jurisdiction *de novo* as a matter of law); *Chemsol, LLC v. United States*, 755 F.3d 1345, 1348 (Fed. Cir. 2014) (reviewing "*de novo* the CIT's dismissal for lack of subject matter jurisdiction").

### II. THE CIT POSSESSES SUBJECT MATTER JURISDICTION UNDER SECTION 1581(a) TO ADDRESS A362'S CLAIMS.

28 U.S.C. §1581(a) grants the Court of International Trade "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. §1581(a). In connection with that jurisdiction, section 1514(a) of the United States Code sets forth the types of protestable decisions, and states:

(a) Finality of decisions; return of papers

Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, ***and, decisions of the Customs Service***, including the legality of all orders and findings entering into the same, ***as to***—

1. the appraised value of merchandise;

2. ***the classification and rate and amount of duties chargeable***;

3. all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

4. the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under [19 U.S.C. § 1337];

5. the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either [19 U.S.C. § 1500] or [19 U.S.C. § 1504];

6. the refusal to pay a claim for drawback; or

7. the refusal to reliquidate an entry under subsection (d) of [19 U.S.C. § 1520].

19 U.S.C. § 1514(a)(emphasis supplied).

The same statutory section establishes the time limits for protesting a decision by a customs officer, stating:

> (3) A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—
>
> (A) date of liquidation or reliquidation, ***or***
>
> (B) in circumstances where subparagraph (A) is inapplicable, ***the date of the decision as to which protest is made.***

19 U.S.C. § 1514(c)(3) (emphasis added). If a protest is not timely filed, the customs officer's decision becomes "final and conclusive." 19 U.S.C. § 1514(a).

Consistent with 19 U.S.C. §1514(a), the plain language of 19 C.F.R. § 174.12(e) establishes alternative calculations as to when a protest is timely depending on what is being protested. Specifically, 19 C.F.R. § 174.12(e) allows protests to be made "within 180 days of a decision relating to an entry made on or after December 18, 2004, after any of the following… (1) The date of notice of liquidation or reliquidation, or the date of liquidation or reliquidation, as determined under §§ 159.9 or 159.10 of this chapter; ***or*** (2) ***The date of the decision, involving neither a liquidation nor reliquidation, as to which the protest is made....***" 19 C.F.R. § 174.12(e) (emphasis supplied).

Against this statutory construct, the key issue here is whether the CIT erred in its failure to find that the Protests made in regard to a decision not involving

liquidation or reliquidation were timely. This is not a case where A362 alleges subject matter jurisdiction under 19 U.S.C. § 1514(a)(5), 19 U.S.C. §1514(c)(3)(A), and 19 C.F.R. § 174.12(e)(1). Instead, this is a case where jurisdiction lies under 19 U.S.C. § 1514(a)(2), 19 U.S.C. §1514(c)(3)(B), and 19 C.F.R. § 174.12(e)(2). Respectfully, the CIT failed to recognize the importance of that distinction.

If there was a protestable decision made by CBP at any point at or after the issuance of the Amended Final Results, A362's Protests are undeniably timely, because the Protests were filed within 180 days of the Amended Final Results. The CIT was so singularly focused on the fact that A362 did not file its Protests within the 180 days following the date of liquidation that it did not properly analyze whether the Protests were timely under the alternative sections of the statutes that allow for timely protests to decisions other than those involving liquidation. When the record and the law are properly reviewed, it is clear that the Protests were timely, the CIT erred, and its dismissal should now be reversed.

Again, the importance of the factual context of this case cannot be overstated. ***A362 had nothing to protest prior to the issuance of the Amended Final Results***.[5]

---

[5] The courts have long held that protests filed prematurely are legally ineffective and cannot serve as basis for invoking jurisdiction of the CIT. *See, e.g., United States v. Reliable Chem. Co.,* 66 C.C.P.A. 123, 127-28, 605 F.2d 1179, 1183 (1979); *Lowa, Ltd. v. United States*, 5 C.I.T. 81, 86, 561 F.Supp. 441, 445 (1983), *aff'd* 724 F.2d 121 (Fed. Cir. 1984); *Baylis Bros. Co. v. United States*, 75 Cust. Ct. 89, 92, 400 F.Supp. 940, 942 (1975).

The 30.61% rate A362 paid upon entry of the merchandise in 2016 was the rate that remained in place as of the liquidation that occurred between October and November 2018, and that rate continued to be the rate in place throughout the duration of the 180-day period following liquidation. Appx29-32. The 180-day period following the 2018 liquidation expired in May 2019. It was not until a month later, in June 2019, that the Amended Final Results were issued, and the CVD rate was cut in half. *See* 84 FR 28011 (June 17, 2019). On this record, it cannot be argued that there was an improper rate assessment A362 could protest in May 2019, because the rate simply had not changed by that date.

Indeed, had A362 filed its Protests prior to May 8, 2019, those Protests would have been a sham filing, because there was nothing A362 could indicate as the proper rate to be assessed other than the rate already in place, and there was no legal authority under which A362 could have even colorably argued that CBP could refund overpaid CVD duties in May 2019. *See, e.g.,* 19 C.F.R. § 174.13(a)(6) (requiring the "justification for the objection")[6]; 19 U.S.C. § 1677g (requiring that

[6] Further, even if A362 had filed a sham protest in May 2019 as a placeholder prior to the expiration of the 180-day period following liquidation, A362 could not have even timely amended that improperly premature protest to request application of the new CVD rate, because amendments must also be filed prior to the expiration of the 180-day period following liquidation, and the new CVD rate was not issued until a month after that period expired. *See* 19 C.F.R. § 174.14(a) (requiring that amendments to a protest be filed "prior to the expiration of the period within which the protest may be filed under § 174.12(e)").

CBP pay interest on overpayments or assess interest on underpayments of the required amounts deposited as estimated countervailing duties).

However, once the Amended Final Results were issued in June 2019, the ITA issued Message No. 9184301 to CBP on July 3, 2019, giving CBP authority and instruction to assess CVD liability, in relevant part, to Zhongyi at the rate of 15.56%. Appx61. CBP simply decided not to do as instructed by Message No. 9184301 or undertake its legal obligation to issue refunds to A362. A362 acted with all diligence to protest CBP's decision to refuse implementation of the requisite refund,[7] and A362's actions are timely on this record.

Furthermore, to adopt the approach espoused by the Defendant and taken by the CIT[8] leaves an undeniable gap where A362 (and other importers in similar

---

[7] Presumably, CBP's failure to issue the required refunds resulted from its failure to recognize that Shandong Zhongyi Rubber Co., Ltd. (which is not specifically mentioned in Message No. 9184301) and Dongying Zhongyi Rubber Co., Ltd. (which is specifically mentioned in Message No. 9184301) were names for one in the same company, interchangeably using the same manufacturer codes. Appx89.

[8] In fact, the CIT did not even examine A362's argument that anything at or after the Amended Final Results provided a new avenue for jurisdiction under § 1581(a). The closest the CIT came to examining this central argument was its mention that the issuance of the Amended Final Results was a decision of Commerce, not Customs, and therefore that event could not serve as a new triggering event for a timely protest. Appx9-10, 15. Indeed, throughout its rulings, the CIT seemed to suggest that A362 was taking issue with the actions of Commerce in the issuance of the Amended Final Results and, therefore, should have invoked a different jurisdictional standard in its Complaint. Appx9-10, 15. That is not the case. To be very clear, and what the CIT apparently misconstrued, A362 takes no issue with the determination of the CVD rate amendment or the issuance of that new rate in the Amended Final Results. That

circumstances) incur damages that have no legal remedy. There was nothing A362 could have properly protested prior to the issuance of the Amended Final Results, because there was neither a different CVD rate to assess nor any legal authority pursuant to which CBP could have issued a refund. However, what the CIT has now decided is that, even though A362 acted promptly following the rate change, following the grant of legal authority to CBP to issue a refund, and following CBP's decision not to issue the required refunds, A362 has no legal right to enforce its demand for the refunds unmistakably owed to it. Defendant keeps a significant amount of money that the law requires be transmitted to A362, with interest, simply because CBP decided not to implement the rate change for the entries at issue. Defendant's agency fails to uphold the law, Defendant keeps the spoils of that failure, and A362 has no ability to access any court review of those activities.

On this record, the CIT had jurisdiction under §1581(a) and 19 C.F.R. § 174.12(e) to review the claims asserted by A362 in its Complaint, and remand is necessary to allow the substantive examination of those claims.

## III. ALTERNATIVELY, THE CIT POSSESSES JURISDICTION UNDER SECTION 1581(i) TO ADDRESS A362'S CLAIMS.

If this Court refuses to find jurisdiction under the plain language of § 1581(a), the CIT still had jurisdiction under § 1581(i) to review the claims asserted by A362

---

rate adjustment was proper and welcome, and A362 has no reason to protest that rate change or any actions of Commerce that resulted in the improved rate assessment.

in its Complaint because § 1581(a) provided a manifestly inadequate remedy and because CBP's actions in the denial of the Protests were unreasonable, arbitrary, and capricious.

Section 1581(i) has been labeled by this Court as a "catch all provision," giving residual jurisdiction to the CIT to hear civil actions against the United States concerning, among other things, importation revenues, tariffs and duties, and administration and enforcement of matters involving Section 515 of the Tariff Act. *See, e.g., Norcal / Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992).

However, the scope of § 1581(i) is limited to prevent circumvention of the administrative processes crafted by Congress. Accordingly, an inquiry into § 1581(i) jurisdiction involves two questions. First, this Court considers whether jurisdiction under a subsection other than § 1581(i) was available. *See Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012). Second, if jurisdiction was available under a different subsection of § 1581, this Court examines whether the remedy provided under that subsection is "manifestly inadequate." *Id.* If the remedy is not manifestly inadequate, then jurisdiction under § 1581(i) is not proper.

The party asserting jurisdiction under § 1581(i) bears the burden of showing that another subsection is either unavailable or manifestly inadequate. *See Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018) (citing *Chemsol, LLC v.*

*United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014)). As discussed below, if this Court finds the CIT lacks jurisdiction to hear A362's claims under § 1581(a), then it follows that § 1581(a) is manifestly inadequate, and jurisdiction under § 1581(i) is proper.

In addition to the jurisdiction conferred by §1581(i) resulting from the manifestly inadequate remedy provided by § 1581(a), CBP's failure to issue refunds due to A362 for overpayments was unreasonable, arbitrary, and capricious. CBP's haphazard behavior is further established by its own issuance of refunds to A362 for overpayments on the CVD Rate assessed to Zhongyi on a later-filed protest that was not pending in the action before the CIT. Appx78-79. A362 presented this newly-discovered evidence in its motion for reconsideration of the CIT's initial dismissal, yet the CIT denied A362's motion for reconsideration and leave to amend the Complaint, relying on its inappropriate presumption of CBP's reasoning. Appx20-21.

Given that § 1581(a) is manifestly inadequate and the CBP's acted in an arbitrary and capricious manner with regard to A362's Protests, remand to the CIT for substantive examination under § 1581(i) is proper and necessary.

### A. If the Court Refuses to Find Jurisdiction Under Section 1581(a), A362 Establishes that that Section Provides a Manifestly Inadequate Remedy.

As case law has established, to be manifestly inadequate, jurisdiction under § 1581(a) "must be an exercise in futility, or 'incapable of producing any result; failing utterly of the desire end through intrinsic defect; useless, ineffectual, vain.'" *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008) (quoting Oxford English Dictionary (2d ed. 1989)). *See also Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1328 (Fed. Cir. 2006) (discussing the futility of a protest).

This Court has repeatedly issued the warning that futility should not be assumed, and a plaintiff "'cannot take it upon itself to determine whether it would be futile to protest or not. In order to protect itself, a protest should have been filed…'" *Int'l Custom Prods.*, 467 F.3d at 1328 (quoting *Inner Secrets / Secretly Yours v. United States*, 869 F.Supp. 959, 966 (Ct. Int'l Trade 1994)).

Unlike the appellant in *Int'l Custom Prods.*, this is not a situation in which A362 sat on its hands or failed to file protests. Not only did A362 comply with and pay every cent of the CVD duties assessed when the entries at issue entered the country in 2016, it acted promptly once the rate was changed and it received first notice that it was owed a refund. Appx29-32. After it was determined that the CVD rate A362 paid three years earlier was approximately double the rate that should

have been charged, A362 filed its Protests within 180 days of the issuance of the Amended Final Results – the first notice A362 received that the CVD rate had changed. Appx29-32. However, these protests were ultimately denied by CBP as being untimely because they were not filed within 180 days of liquidation. Appx4.

Truly, this creates a futile, "no-win" situation for the importer. If A362 had filed a sham protest prior to the issuance of the Amended Final Results, it would have had no different rate to allege and no legal basis to claim a refund. *See, e.g., United States v. Reliable Chem. Co.,* 66 C.C.P.A. 123, 127-28, 605 F.2d 1179, 1183 (1979); *Lowa, Ltd. v. United States*, 5 C.I.T. 81, 86, 561 F.Supp. 441, 445 (1983), *aff'd* 724 F.2d 121 (Fed. Cir. 1984); *Baylis Bros. Co. v. United States*, 75 Cust. Ct. 89, 92, 400 F.Supp. 940, 942 (1975). Instead, once A362 had knowledge that a different CVD rate was available and that CBP had been given legal authority – for the first time – to issue refunds on the prior overpayments, it filed its Protests, which were deemed untimely. Appx4.

This situation presents precisely the situation that §1581(i) jurisdiction was designed to address, because, if the CIT's improper dismissal of A362's Complaint for lack of subject matter jurisdiction is upheld, any avenue available to A362 under §1581(a) is demonstrably futile and, thereby, manifestly inadequate. A362 filed its Protests once it had notice and ability to claim a new rate. If those Protests were untimely (even if, under the Defendant's logic, they had been filed the very day the

rate first changed), A362 had no actual remedy available at any point under §1581(a) once the CVD rate changed and established A362's right to a refund. This situation should unlock the CIT's jurisdiction under §1581(i), and the CIT's determination to the contrary should be reversed and remanded.

### B. CBP's Actions were Unreasonable, Arbitrary, and Capricious, as Confirmed by CBP's Own Reversal in a Subsequent Determination, Providing Jurisdiction Under 28 U.S.C. § 1581(i)(1)(D).

In addition, when reviewing underlying administrative decisions, this Court will hold as unlawful any administrative decision that is arbitrary, capricious, or an abuse of discretion. *See* 19 U.S.C. § 1516a(b)(1)(A). An agency decision would be arbitrary and capricious "if the agency has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency expertise." *Motor Vehicle Mfgs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Further, it is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (alteration, quotation marks and citation omitted). An agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48

(citations omitted). Thus, when the administering agency's actions are internally inconsistent and self-contradictory, and the agency treats similarly-situated parties differently or fails to consider an important aspect of a problem, the agency's decisions are arbitrary and capricious and subject to reversal.

The week after the CIT issued its Order dismissing A362's action, CBP issued a decision in regard to a separate protest filed by A362 (Protest No. 160120103706), in which A362 presented the same argument as had been previously stated in the Protests regarding passenger tires manufactured by Zhongyi. Appx84-95. In its decision regarding Protest No. 160120103706, CBP agreed with the arguments presented by A362, assessed a rate of 15.53% to the entries A362 imported from Zhongyi during the Period of Review, and issued A362 a refund given the fact that A362 had paid a duty rate of 30.61% at the time of import. Appx94-95. Identical to the situation involving the Protests, with regard to the entry at issue in Protest No. 160120103706, A362 had no claim for refund (nor did CBP have authority to issue refunds) prior to the issuance of the Amended Final Results and the attendant Message No. 9184301 directing CBP to implement those Amended Final Results.

As detailed above, on May 19, 2021, A362 brought a motion for reconsideration of the CIT's April 21, 2021 Order. Appx70-95. In its motion for reconsideration, A362 presented this newly-discovered evidence concerning the CBP's actions, demonstrating that CBP was acting in an unjust, arbitrary, and

capricious manner in a way that would provide the CIT jurisdiction under 28 U.S.C. § 1581(i)(1)(D). Appx78-79.

On September 20, 2021, the CIT denied A362's motion for reconsideration and leave to amend the Complaint. Appx12-21. The CIT ruling on reconsideration presumes that CBP's ruling on the new protest was made because that protest was filed within 180 days of liquidation. However, the CIT erred by making this assumption. While that is certainly one reason the later-filed protest could have been granted, the record does not state that was the reason, nor does the record negate the equally-likely alternative assumption that the later-filed protest was granted because of its substance – that A362 was entitled to the refunds. CBP failed to provide any reasoning as to why Protest No. 160120103706 was handled differently than the Protests at issue. A reviewing court should not attempt itself to make up a reasoned basis to make up for an agency's failure to do so in the first instance. *See, e.g., Motor Vehicle Mfgs.*, 463 U.S. at 43. It is the agency's job to provide its reasoning as to why it treated similar situations differently. *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001). With no explanation provided by CBP, it is equally likely that CBP granted the refund requested in Protest No. 160120103706 because A362 was entitled to it, for the same substantive reasons A362 was entitled to the refunds requested in the Protests.

Further, CBP's handling of Protest No. 160120103706 also illustrates that CBP failed to consider an important aspect with regard to the Protests at issue here. The facts of this case – A362's payment of the CVD duties, the publication of the Amended Final Results, and the date of A362's Protests (filed promptly after it had legal basis to do so) – required CBP to make a holistic analysis. Instead, because the Protests did not fit into the separate (and inapplicable) 180-day deadline following liquidation, CBP classified the Protests as denied. By failing to consider the unique procedural and factual posture of the Protests, and the fact that protests can be timely filed using benchmarks other than liquidation, CBP's decision was arbitrary and capricious. *See Motor Vehicle Mfgs. Ass'n*, 463 U.S. at 43.

The CIT's presumption, that the later-filed protest was granted on procedural and not substantive grounds, again ignores the alternative statutory mechanisms and, as a matter of law, is not a presumption that can or should be made at the motion to dismiss phase. *See, e.g., Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (holding that "If a Rule 12(b)(1) motion simply challenges the court's subject matter jurisdiction based on the sufficiency of the pleading's allegations – that is, the movant presents a 'facial' attack on the pleading – then those allegations are taken as true and construed in a light most favorable to the complainant.") What is important at this juncture is that internally-inconsistent and self-contradictory decisions by CBP treated similarly-situated situations differently,

failed to consider important aspects of a problem, were arbitrary and capricious, and provide the CIT jurisdiction under 28 U.S.C. § 1581(i)(1)(D).

## CONCLUSION AND RECOMMENDED APPELLATE REMEDY

For the reasons detailed above, Plaintiff-Appellant Acquisition 362 respectfully requests this Court enter judgment in its favor and reverse the CIT's dismissal for lack of subject matter jurisdiction, remanding this case for a substantive determination before the CIT.

Respectfully submitted,

Dated: March 4, 2022

**COZEN O'CONNOR**

By: /s/ Heather L. Marx

Heather L. Marx
Thomas G. Wallrich
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
Telephone: 612-260-9000
Fax: 612-260-9084
hmarx@cozen.com
twallrich@cozen.com

*Attorneys for Plaintiff-Appellant Acquisition 362 dba Strategic Import Supply*

# ADDENDUM

Slip Op. No. 21-46

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ACQUISITION 362, LLC DBA STRATEGIC IMPORT SUPPLY,<br>*Plaintiff*,<br>v.<br>UNITED STATES,<br>*Defendant*. | Before: Stephen Alexander Vaden, Judge<br><br>Court No. 1:20-cv-03762 |

## OPINION

**[Granting Defendant's motion to dismiss for lack of subject matter jurisdiction.]**

Dated: April 21, 2021

Heather L. Marx, Cozen O'Connor, of Minneapolis, MN, for Plaintiff Acquisition 362, LLC DBA Strategic Import Supply. With her on the brief were Thomas G. Wallrich and Cassandra M. Jacobsen.

Hardeep K. Josan, Trial Attorney, International Trade Field Office, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of New York, NY for Defendant United States. With him on the brief were Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Commercial Litigation Branch and Offices of Foreign Litigation and International Legal Assistance, Aimee Lee, Assistant Director, Commercial Litigation Branch and Offices of Foreign Litigation and International Legal Assistance, and Justin R. Miller, Attorney-In-Charge, International Trade Field Office. Of Counsel was Paula S. Smith, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

**Vaden, Judge:** Plaintiff Acquisition 362, LLC, doing business as Strategic Import Supply, filed this case under Section 515 of the Tariff Act of 1930, as amended, contesting the denial of its protests over countervailing duties. Specifically, Plaintiff

challenges a decision by U.S. Customs and Border Protection (Customs) to assess countervailing duties on the importation from the People's Republic of China (China) of certain passenger vehicle and light truck tires over the course of multiple entries throughout 2016. Compl., ECF No. 5. Before the Court is the Government's motion to dismiss for lack of subject matter jurisdiction. Def.'s Mot. to Dismiss (Def.'s Mot.), ECF No. 25. For the reasons set forth below, this Court finds that it lacks subject matter jurisdiction and grants the Government's motion.

## BACKGROUND

On August 10, 2015, the U.S. Department of Commerce (Commerce) issued a countervailing duty order regarding tires from China. *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, 80 Fed. Reg. 47902 (Aug. 10, 2015). Commerce's order included tire imports from Zhongyi Rubber Company Ltd. (Zhongyi). *See* Compl. ¶ 4, ECF No. 5; 80 Fed. Reg. at 47905. Plaintiff, an importer of tires, imported tires from Zhongyi on several occasions in 2016. Compl. ¶ 7, ECF No. 5; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss (Pl.'s Mem.) at 2, ECF No. 27. Because Plaintiff's tire imports were subject to the duties established in Commerce's 2015 order, it "deposited payment of the assessed countervailing duties at a rate of 30.61%, the rate assigned…at the time entries were made." Pl.'s Mem. at 2, ECF No. 27.

Zhongyi and other interested parties requested that Commerce initiate an administrative review of its 2015 order. *Id.* at 7; Protests and Entries from the Port

of Wilmington, NC., ECF No. 11-1 at 8 (Protest NC). Commerce agreed and published a notice in the Federal Register on October 16, 2017. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 82 Fed. Reg. 48051 (Oct. 16, 2017). Zhongyi would later withdraw its individual request for administrative review and therefore "Commerce rescinded this review of the [countervailing duty] Order on…tires from China with regard to Zhongyi."[1] Protest NC, ECF No. 11-1 at 8.

If an interested party, domestic or otherwise, does not request an administrative review of the applicability of a countervailing duty order to it, the regulations require the Secretary of Commerce to instruct Customs to assess countervailing duties on merchandise described by the order. 19 C.F.R. § 351.212(c). As such, Customs liquidated Plaintiff's entries between October 19, 2018 and November 9, 2018, at the 30.61% countervailing duty rate. Compl. ¶ 11, ECF No. 5; Summons ECF No. 1-1. Plaintiff did not file a protest of the liquidation within 180 days of its completion. *Cf.* 19 U.S.C. § 1514(c)(3).

On June 17, 2019, Commerce issued its Amended Final Results following its administrative review of the Countervailing Duty Order. *See Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Countervailing Duty Administrative Review*;

[1] Plaintiff submits Zhongyi withdrew its request for review because it was a non-selected company under review under an alternative company name, Dongying Zhongyi Rubber Co., Ltd. Plaintiff further submits "Zhongyi and Dongying Zhongyi are one in the same company." Protest NC, ECF No. 11-1 at 8.

2016, 84 Fed. Reg. 28011 (June 17, 2019) (Amended Final Results); Pl.'s Mem. at 2, ECF No. 27. The Amended Final Results concluded that the applicable countervailing duty amount should be nearly cut in half — from 30.61% to 15.56%. *Id.* at 28012. The International Trade Administration (ITA) issued Message No. 9184301 to Customs on July 3, 2019, instructing Customs to liquidate the relevant entries at the newly calculated rate.[2] Pl.'s Mem. at 3, ECF No. 27; *Liquidation instructions for passenger vehicle and light truck tires from the People's Republic of China for the period of 01/01/2016 through 12/31/2016*, ITA Message No. 9184301 (July 3, 2019) available at https://aceservices.cbp.dhs.gov/adcvdweb/#9184301 (last visited Apr. 16, 2021).

Plaintiff filed protests on December 12 and December 13, 2019, for each already liquidated entry for its 2016 tire imports. Pl.'s Mem. at 4. Customs denied Plaintiff's protests as untimely and emailed the rejection notices to Plaintiff on April 24, 2020. Protests, ECF Nos. 11 to 21, 24. Plaintiff argues the protests were timely as they were filed within 180 days of Customs' decision not to apply an amended countervailing duty rate after receipt of instructions from the ITA to assess amended

---

[2] Commerce normally determines the rates for non-selected companies in reviews in a manner that is consistent with section 705(c)(5) of the Tariff Act of 1930, which provides instructions for calculating the all-others rate in an investigation. For non-selected companies subject to review by Commerce's administrative review, the ITA calculates the appropriate countervailing duty rate. This non-selected rate is the catch-all rate that would apply to companies not selected for individual examination by Commerce in an administrative review. 19 U.S.C. § 1671d(c)(1)(B)(i)(I). Plaintiff has not challenged Commerce's rate determination.

duty rates. Plaintiff subsequently commenced this action on October 15, 2020, to challenge the denial of the protests. Summons, ECF No. 1.

The Government moves to dismiss Plaintiff's Complaint. It argues that 19 U.S.C. § 1514(a) enumerates the Customs decisions that are protestable, a prerequisite to asserting jurisdiction under 28 U.S.C. § 1581(a). Unless a party files a protest of those enumerated actions within the required time limits, Customs' decision becomes final and conclusive. *See* 19 U.S.C. § 1514. The Government claims that Plaintiff's challenge to Customs' "decision" not to apply the amended countervailing duty rates to Plaintiff's already liquidated entries is not a valid claim under section 1514 because Customs made no decision that may now be challenged. *See* Def.'s Reply in Supp. of Mot. to Dismiss (Def.'s Reply) at 9, ECF No. 28. To the Government, it is simple: Because Plaintiff's protests arrived more than 180 days after the liquidations, Plaintiff is precluded from challenging the denial of its untimely protests now that Commerce has agreed the duty rate should be less. *See* Def.'s Mot. at 12, ECF No. 25. Accordingly, the Government argues that this Court lacks subject-matter jurisdiction to hear Plaintiff's case.

## STANDARD OF REVIEW

"[A] court's subject-matter jurisdiction defines its power to hear cases." *Lightfoot v. Cendant Mortgage Corp.*, 137 S. Ct. 553, 560 (2017). To adjudicate a case, a court must have subject-matter jurisdiction over the claim presented. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94-95 (1998). Even where the parties

themselves fail to raise the issue, "federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l., Ltd.,* 556 F.3d 459, 465 (6th Cir. 2009); *see also Capron v. Van Noorden*, 6 U.S. (2 Cranch) 126, 127 (1804) ("[I]t [is] the duty of the Court to see that they had jurisdiction, for the consent of the parties could not give it."). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the [claim] in its entirety." *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 514 (2006).

This Court's jurisdiction under 28 U.S.C. § 1581(a) provides for "exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." Section 1581(a) grants this Court jurisdiction over Customs' denial of protests and "'provides no jurisdiction for protests outside the [ ] exclusive categories' listed in 19 U.S.C. § 1514(a)." *Sunpreme Inc. v. United States,* 892 F.3d 1186, 1191 (Fed. Cir. 2018) (quoting *Mitsubishi Elecs. Am., Inc. v. United States,* 44 F.3d 973, 976 (Fed. Cir. 1994)) (brackets in original). A plaintiff bears the burden of establishing subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). In resolving disputed predicate jurisdictional facts, this Court may review evidence extrinsic to the pleadings. *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States,* 672 F.3d 1021, 1030 (Fed. Cir. 2012).

This Court's jurisdiction is limited furthermore to cases in which the United States has waived sovereign immunity and consented to suit. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Consent cannot be implied "but must be unequivocally expressed." *Id.* Without jurisdictional statutes enacted by Congress authorizing suit against the United States, there would be no jurisdiction to entertain claims against the United States. *Id.* Plaintiff must demonstrate that its claims come within the confines of the statutory conditions set by Congress. *Ruckelshaus v. Sierra Club,* 463 U.S. 680 (1983) (holding that waivers of immunity authorized by statute must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires).

## DISCUSSION

Plaintiff claims jurisdiction under 28 U.S.C. § 1581(a), asserting it "is protesting the decision by U.S. Customs and Border Protection…to ignore the mandate of the Amended Final Results issued by the U.S. Department of Commerce…and instructions from the International Trade Administration." Pl.'s Mem. at 1, ECF No. 27; Compl. ¶ 2, ECF No. 5. Although Plaintiff acknowledges it filed the protests with Customs later than 180 days after liquidation, it argues the 180-day clock should not have begun at the time of liquidation. *See* Pl.'s Mem. at 7, ECF No. 27. Instead, Plaintiff argues its protests were timely because they were filed within 180 days of Customs' receipt of instructions from Commerce. *Id.* at 7. The Government responds that, because Plaintiff's protests were filed more than 180 days

after liquidation, the protests are untimely and fail to meet the requirements necessary to establish jurisdiction before this Court. *See* **Def.'s Mot. at 6, ECF No. 25; Def.'s Reply at 4, ECF No. 28. As both sides acknowledge the jurisdiction-robbing 180-**day deadline to file a valid protest, the dispute here is over when that 180-day time period begins.

**I**

Although 28 U.S.C. § 1581(a) provides for exclusive jurisdiction to contest the denial of a protest under 19 U.S.C. § 1515, there are procedural prerequisites to obtaining that jurisdiction. Section 1514 provides those prerequisites necessary to establish a valid challenge of a protest denial. 19 U.S.C. § 1514. It provides that all Customs decisions, including liquidation, become final unless a party files a protest. 19 U.S.C. § 1514(a). The section then identifies the decisions that are subject to protest:

> [D]ecisions of the Customs Service, including the legality of all orders and findings entering into the same, as to
>
> (1) the appraised value of merchandise;
>
> *(2) the classification and rate and amount of duties chargeable*;
>
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
>
> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
>
> *(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;*
>
> (6) the refusal to pay a claim for drawback; or

**Appx8**

> (7) the refusal to reliquidate an entry under section 1520(c) of this title;
>
> shall be final and conclusive upon all persons...unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade....

19 U.S.C § 1514(a) (emphasis added to identify the Customs decisions relevant to the present matter). The same section establishes time limits for protesting a Customs decision. 19 U.S.C. § 1514(c). A valid protest must be filed within 180 days of the Customs decision. *Id.* **Taken together, these two sections mean "a protest must have** been timely filed under 19 U.S.C. § 1514(c)(3) for this Court to obtain jurisdiction over **a suit that contests its denial."** *US JVC Corp. v. United States*, 15 F. Supp. 2d 906, 909 (CIT 1998); *accord Mitsubishi Elecs. Am., Inc. v. United States*, 44 F.3d 973 (Fed. Cir. 1994).

**Plaintiff urges the Court to consider the protests timely "because they were** filed within 180 days following the issuance of the decision to implement the **Amended Final Results" supplied by Commerce to Customs. Pl.'s Mem. at 7, ECF No. 27. Herein lies the problem with Plaintiff's argument that Customs' receipt of** amended countervailing duty rates from Commerce is a Customs decision that triggers the 180-day time period. This Court has held, and the Federal Circuit has affirmed, that determinations of countervailing duty and antidumping duty rates are not Customs decisions but rather Commerce decisions. *See, e.g., Mitsubishi Elecs, Am.*, 44 F.3d at 977 (holding that decisions about the rate of an antidumping duty

are made by Commerce and Customs' role is to apply Commerce's instructions). Customs holds but a ministerial role in implementation once these rate decisions are shared with it. *Id*. Therefore, the Plaintiff cannot carry its burden because it cannot (and has not) identified a Customs decision that it timely protested. *See Sunpreme*, 892 F.3d at 1192–94; *Mitsubishi Elecs. Am.*, 44 F.3d at 975, 977-78. If the Plaintiff sought to challenge Commerce's imposition of countervailing duties or its determination of a countervailing duty rate, an action should have been brought before this Court under its 28 U.S.C. § 1581(c) jurisdiction and not its § 1581(a) jurisdiction, as Plaintiff has done here.[3] *See* 19 U.S.C. § 1516a.

**II**

The application of the allegedly improper countervailing duty rates to Plaintiff's entries occurred from October 19 through November 9, 2018, when Customs liquidated Plaintiff's entries. Summons at 4, ECF No. 1; Def.'s Mot. at 2, ECF No. 25. A timely protest of Customs' liquidation had to be filed within 180 days of that liquidation. 19 U.S.C. § 1514. Plaintiff acknowledges filing outside the 180-

[3] Because Zhongyi withdrew its request to Commerce to review the countervailing duty order, Customs assessed the countervailing duties on these non-reviewed entries in accordance with the final determination in effect at the time of entry. *See Capella Sales & Servs. Ltd. v. United States, Aluminum Extrusions Fair Trade Comm.*, 878 F.3d 1329, 1335 (Fed. Cir. 2018) ("We do not question the authority of [Commerce], pursuant to its regulation, to liquidate entries…at the rate set in the original antidumping duty order when there has been no challenge to the validity of that order and no request for annual review.") (quoting *Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1577 (Fed. Cir. 1990)) (omission and alteration in original).

day post-liquidation time period. *See* Pl.'s Mem. at 9, ECF No. 27. Therefore, even if the Court were to assume that the protests Plaintiff filed were valid, this Court lacks jurisdiction over the denial of Plaintiff's protests because of their untimeliness.

## CONCLUSION

Plaintiff's challenge before this Court fails for two separate reasons. First, by using a protest against Customs to dispute a determination made by Commerce, Plaintiff has invoked the wrong jurisdictional statute. *Compare* 28 U.S.C. § 1581(a) (providing jurisdiction over denials of Customs protests) *with* 28 U.S.C. § 1581(c) (providing jurisdiction for challenges to determinations of countervailing duty rates by Commerce). Second, Plaintiff's admission that it filed its protests more than 180 days after Customs liquidated its entries also proves fatal. Were Plaintiff's protests permissible, they would be untimely and thus deprive the Court of jurisdiction. Either reason is sufficient to require dismissal; and for both the foregoing reasons, Defendant's motion to dismiss is GRANTED.

/s/ Stephen Alexander Vaden
Stephen Alexander Vaden, Judge

Dated: April 21, 2021
New York, New York

Slip Op. No. 21-120

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ACQUISITION 362, LLC DBA STRATEGIC IMPORT SUPPLY,<br>*Plaintiff*,<br>v.<br>UNITED STATES,<br>*Defendant*. | Before: Stephen Alexander Vaden, Judge<br><br>Court No. 1:20-cv-03762 |

## OPINION AND ORDER

[Denying Plaintiff's Motion for Reconsideration and Leave to Amend Its Complaint.]

Dated: September 20, 2021

Heather L. Marx, Cozen O'Connor, of Minneapolis, MN, for Plaintiff Acquisition 362, LLC DBA Strategic Import Supply. With her on the brief were Thomas G. Wallrich and Cassandra M. Jacobsen.

Hardeep K. Josan, Trial Attorney, International Trade Field Office, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of New York, NY for Defendant United States. With him on the brief were Jeffrey Bossert Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Commercial Litigation Branch and Offices of Foreign Litigation and International Legal Assistance, Aimee Lee, Assistant Director, Commercial Litigation Branch and Offices of Foreign Litigation and International Legal Assistance, and Justin R. Miller, Attorney-In-Charge, International Trade Field Office. Of Counsel was Paula S. Smith, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

**Vaden, Judge:** On May 19, 2021, Plaintiff Acquisition 362, LLC, doing business as Strategic Import Supply, filed a motion under USCIT Rule 59(a)(1)(B) for reconsideration of the Court's April 21, 2021 decision and the accompanying

judgment that dismissed Plaintiff's case for lack of subject matter jurisdiction. *See Acquisition 362, LLC v. United States*, 517 F.Supp.3d 1318 (Ct. Int'l Trade 2021) (*Acquisition 362 I*). In that decision, the Court found that the precondition for the Court's 28 U.S.C. § 1581(a) jurisdiction, a valid protest under 19 U.S.C. § 1514, was absent; and the Court therefore lacked subject matter jurisdiction. In its Motion for Reconsideration, Plaintiff cites newly discovered evidence that it argues merits reconsideration of the Court's order dismissing its action. *See* Pl.'s Mot. for Recons. (Pl.'s Mot.) at 4, ECF No. 31. Plaintiff also seeks leave of the Court to amend its complaint to assert jurisdiction under 28 U.S.C. § 1581(i).[1] Pl.'s Mot. at 5, ECF No. 31. Defendant filed a response to Plaintiff's Motion on June 23, 2021. Def.'s Resp. in Opp'n to Pl.'s Mot. for Recons. (Def.'s Resp.), ECF No. 33. Defendant argues that Plaintiff's evidentiary arguments are without merit and that Plaintiff's request to amend its complaint is both procedurally inappropriate and futile. *See id.* Plaintiff filed a reply brief on July 14, 2021, and the Motion is ripe for consideration. Pl.'s Reply in Supp. of Mot. for Recons. (Pl.'s Reply), ECF No. 34. For the reasons that follow, Plaintiff's Motion is denied.

## BACKGROUND

The Court presumes familiarity with the facts of this case as set forth in its previous opinion, *see Acquisition 362 I*, 517 F.Supp.3d at 1320-22, and recounts those

[1] Plaintiff improperly seeks leave to amend its complaint via a Rule 59 motion for reconsideration rather than a Rule 15 motion to amend pleadings. Nonetheless, the Court will consider Plaintiff's request because, even if properly filed, it would fail for futility.

facts relevant to the disposition of this Motion. Plaintiff imported tires from China on several occasions throughout 2016. Compl. ¶ 7, ECF No. 5; Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss (Pl.'s Mem.) at 2, ECF No. 27. These tire imports were subject to a 2015 countervailing duty order issued by the U.S. Department of Commerce (Commerce). Consequently, Plaintiff deposited payment at the then-current countervailing duty rate – 30.61%. Pl.'s Mem. at 2, ECF No. 27. U.S. Customs and Border Protection (Customs) liquidated Plaintiff's entries between October 19, 2018 and November 9, 2018, at the 30.61% countervailing duty rate. Compl. ¶ 11, ECF No. 5; Summons, ECF No. 1-1. On June 17, 2019, Commerce concluded an administrative review, initiated by other parties, determining that the applicable countervailing duty amount for tires from China should be nearly cut in half – from 30.61% to 15.56%. *See Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 28,011 (June 17, 2019); Pl.'s Mem. at 2, ECF No. 27.

In *Acquisition 362 I*, Plaintiff, claiming jurisdiction under 28 U.S.C. § 1581(a), sought to protest Customs's failure to assess the amended countervailing duties on Plaintiff's 2016 entries. Pl.'s Mem. at 1, ECF No. 27; Compl. ¶ 2, ECF No. 5. Despite acknowledging filing its protests outside the required 180-day post-liquidation time period, Plaintiff urged this Court to identify an alternative starting point for the 180-day clock. *See* Pl.'s Mem. at 7, ECF No. 27. Specifically, Plaintiff argued this Court

should recognize the date Customs received amended countervailing duty rates from Commerce as the starting date for the 180-day time period to file a valid protest. *Id.* at 7.

Defendant argued that the alleged decision Plaintiff sought to protest was not a Customs decision for which Plaintiff could assert a valid protest. *See* Def.'s Reply in Supp. of Mot. to Dismiss (Def.'s Reply) at 9, ECF No. 28. Further, because the Plaintiff failed to file its protests within 180-days of a recognized Customs decision, Defendant argued Plaintiff failed to meet the jurisdictional prerequisites necessary to bring a successful challenge before this Court under 28 U.S.C. § 1581(a). *See* Def.'s Mot. to Dismiss (Def.'s Mot.) at 12, ECF No. 25.

On April 21, 2021, the Court granted Defendant's Motion to Dismiss. *See generally Acquisition 362 I,* 517 F.Supp.3d 1318. In its decision, the Court found that the Plaintiff's challenge failed for two reasons. *Id.* First, Plaintiff invoked the wrong jurisdictional statute to challenge the actual decision with which it took issue – the countervailing duty rate determined by Commerce rather than by Customs. *Id.* at 1322-24. Second, even if Plaintiff's protests were permissible, because they were filed outside the required 180-day time period, they would be untimely and thus deprive the Court of jurisdiction. *Id.* at 1324. Plaintiff subsequently moved on May 19, 2021, for this Court to reconsider its decision in *Acquisition 362 I.* Pl.'s Mot., ECF No. 31.

Plaintiff argues that newly-discovered, previously-unavailable evidence warrants reconsideration of the Court's Order. Pl.'s Mot. at 4, ECF No. 31. Plaintiff's

newly-discovered evidence consists of a protest filed with Customs that is allegedly similar to the protests in *Acquisition 362 I* yet was decided differently. Decl. of Heather Marx in Supp. of Pl.'s Mot. for Recons. (Decl.), ECF No. 32. On May 1, 2020, Customs liquidated one of Plaintiff's entries from December 2015. Decl., ECF No. 32-1 at 2. On August 5, 2020, less than 180 days later, Plaintiff filed a protest with Customs on the same grounds argued in the protests at issue in *Acquisition 362 I*. *Id.* Nine days after this Court issued its opinion in *Acquisition 362 I*, Customs issued a decision regarding Plaintiff's August 2020 protest, assessing a lower countervailing duty rate of 15.53%.[2] Decl., ECF No. 32-2 at 2.

The Government opposes Plaintiff's Motion. *See* Def.'s Resp., ECF No. 33. It argues that Plaintiff's alleged newly-discovered evidence fails to show that the Court erred in dismissing this case for lack of subject matter jurisdiction. *Id.* at 3. Unlike the protests at issue in *Acquisition 362 I*, Plaintiff's August 2020 protest was timely filed – within 180 days of liquidation. *Id.* Therefore, the Government argues, this newly-discovered evidence fails to undermine the Court's rationale for dismissing Plaintiff's original challenge for lack of subject matter jurisdiction. *Id.*

The Government also opposes the Plaintiff's request for leave to amend its complaint to assert jurisdiction under 28 U.S.C. § 1581(i) for two reasons. Def.'s Resp.

---

[2] This rate differs from the 15.56% rate listed in Commerce's 2019 final order establishing a reduced duty. *Cf. Amended Final Results of Countervailing Duty Administrative Review*, 84 Fed. Reg. at 28,012. The discrepancy of 0.03% is not explained in the materials before the Court; however, it is immaterial to the disposition of the Motion.

at 4, ECF No. 32. First, the Government argues the Plaintiff's amendment to its complaint would improperly create jurisdiction by alleging an entirely new claim based on events after Plaintiff's filing suit. *Id.* Second, any amendment alleging jurisdiction under 28 U.S.C. § 1581(i) would be futile because such jurisdiction is not available in this case. Def.'s Resp. at 5, ECF No. 32.

**STANDARD OF REVIEW**

Plaintiff moves the Court to reconsider, alter, or amend its prior decision under USCIT Rule 59(a)(1)(B), which is a mechanism for requests for reconsideration in the Court of International Trade.[3] *See United States v. UPS Customhouse Brokerage, Inc.*, 714 F. Supp.2d 1296, 1300 (Ct. Int'l Trade 2010). Under USCIT Rule 59(a)(1)(B), "The court may, on motion, grant a new trial or rehearing on all or some of the issues – and to any party… after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." USCIT Rule 59(a)(1)(B). The grant of a motion for reconsideration is within the sound discretion of the Court. *UPS Customhouse Brokerage, Inc.*, 714 F.Supp.2d at 1300 (citing *Yuba Nat. Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990)).

---

[3] Despite the plain text of Rule 59 referring to "actions which have been tried and gone to judgment," longstanding decisions of this Court identify Rule 59 as allegedly broad enough to include "rehearing of any matter decided by the court without a jury." *Nat'l Corn Growers Ass'n v. Baker*, 623 F.Supp. 1262, 1274 (Ct. Int'l Trade 1985). Regardless of whether USCIT Rule 59 or USCIT Rule 60 is the more textually appropriate basis for Plaintiff's Motion, this Court has the power to reconsider its prior opinion. *Compare* USCIT Rule 59(a)(1)(B) (invoked by Plaintiff here and providing for rehearing "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court"), *with* USCIT Rule 60(b) (providing that the Court "may relieve a party or its legal representative from a *final judgment, order*, or proceeding" for any of the listed reasons (emphasis added)).

Reconsideration or rehearing of a case is proper when "a significant flaw in the conduct of the original proceeding" exists. *Union Camp Corp. v. United States*, 963 F.Supp. 1212, 1213 (Ct. Int'l Trade 1997) (quoting *Kerr-McGee Chem. Corp. v. United States*, 14 CIT 582, 583 (1990)). Examples include:

> (1) an error or irregularity in the trial; (2) a serious evidentiary flaw; (3) a discovery of important new evidence which was not available even to the diligent party at the time of trial; or (4) an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which impaired a party's ability to adequately present its case[,] and must be addressed by the Court.

*Id.* at 1213 (quoting *United States v. Gold Mountain Coffee, Ltd.*, 601 F.Supp. 212, 214 (Ct. Int'l Trade 1984)).

The purpose of a Rule 59 motion is not to allow the losing party to reargue its case. *Peerless Clothing Int'l, Inc. v. United States*, 991 F.Supp.2d 1335, 1337 (Ct. Int'l Trade 2014). The Court should not disturb its prior decision unless it is manifestly erroneous. *Papierfabrik August Koehler SE v. United States*, 44 F.Supp.3d 1356, 1357 (Ct. Int'l Trade 2015).

**DISCUSSION**

Plaintiff requests that the Court reconsider its decision in *Acquisition 362 I*. *See* Pl.'s Mot., ECF No. 31. Plaintiff submits as new evidence a successful protest filed with Customs that Plaintiff argues is identical to the protests at issue in *Acquisition 362 I*. *See* Decl., ECF No. 32. Both the protest submitted as new evidence in this Motion and the protests at issue in *Acquisition 362 I* relate to the Plaintiff's assertion

that the countervailing duties assessed against it should have been reduced following Commerce's administrative review. *Compare* Protests, ECF Nos. 11-21, 24, *with* Decl., ECF. No 32. Customs denied the protests in *Acquisition 362 I* as untimely; therefore, no reduction in countervailing duties resulted. Protests, ECF Nos. 11-21, 24. Conversely, Customs granted the protest submitted by Plaintiff as new evidence; and Plaintiff received a reduction in the countervailing duties assessed. Decl. at 13, ECF No. 32. To the Plaintiff, the difference in results between these protests indicates Customs was incorrect in denying the original protests adjudicated in *Acquisition 362 I*.

Defendant opposes Plaintiff's Motion, arguing the Plaintiff's new evidence fails to satisfy the burden for reconsideration. Def.'s Resp. at 3, ECF No. 33. Without addressing the issues raised by the Plaintiff in each protest, the Defendant notes the important timeline differences between the original protests and the August 2020 protest submitted as new evidence. *Id.* Defendant argues the timeline differences alone are enough to reject Plaintiff's Motion. *Id.* The Defendant also objects to Plaintiff's belated attempt to assert jurisdiction under 28 U.S.C. § 1581(i). *Id.*

Plaintiff's claims failed in *Acquisition 362 I* not because of substance but because of procedure. The law requires any protest of a Customs decision to be filed within 180 days of that decision. *See* 19 U.S.C. § 1514(c). The decision at issue was Customs's liquidations of Plaintiff's entries. *Acquisition 362 I,* 517 F.Supp.3d at 1324. Filing a timely protest is a mandatory prerequisite to invoking this Court's

jurisdiction to review Customs's protest decision. *See* 19 U.S.C. § 1514(a) (providing that Customs's liquidation "shall be final and conclusive upon all persons . . . unless a protest is filed" timely); *U.S. JVC Corp. v. United States*, 15 F.Supp.2d 906, 909 (Ct. Int'l Trade 1998) ("[A] protest must have been timely filed under 19 U.S.C. § 1514(c)(3) for this Court to obtain jurisdiction over a suit that contests its denial."). Plaintiff frankly acknowledged it filed its protests more than 180 days following the entries' liquidation. Pl.'s Mem. at 9, ECF No. 27. Thus, it matters not that Customs applied the "wrong" rate; this Court lacks jurisdiction to hear Plaintiff's suit to contest the error because Plaintiff waited too long to protest.

Not so with the August 2020 protest. Customs liquidated the entry at issue on May 1, 2020. Decl., ECF No. 32-1 at 2. Ninety-six days later, Plaintiff filed its protest on August 5, 2020, well within the 180-day deadline. *See id.* Having filed both a timely protest *and* a valid protest, Plaintiff received the lower rate it sought. Decl., ECF No. 32-2 at 2. The lesson is both clear and stark: Don't sit on your rights. *See JVC Corp.*, 15 F.Supp.2d at 909. That Plaintiff later filed a timely protest of a different liquidation cannot grant the Court jurisdiction to review previous, untimely protests. Plaintiff's Motion for Reconsideration is denied.

Regarding Plaintiff's request to amend its complaint to state a new claim under Section 1581(i), Section 1581(i) embodies a "residual" grant of jurisdiction and may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available. *Sunpreme, Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018)

(quoting *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1371 (Fed. Cir. 2002)). Plaintiff had at least one clear route to properly invoke this Court's jurisdiction. Had Plaintiff filed its protest within 180 days of Customs's liquidation of the challenged entries, this Court would have had jurisdiction to review Customs's decision.[4] *See JVC Corp.*, 15 F.Supp.2d at 909. Because "another subsection of § 1581 is or could have been available" and that remedy would not be "manifestly inadequate," Section 1581(i) "may not be invoked." *Sunpreme, Inc.*, 892 F.3d at 1192 (quoting *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)). Plaintiff's proposed complaint amendment would be of no use, and its Motion to do so is denied as futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## CONCLUSION

Plaintiff has failed to identify a "significant flaw" in the Court's opinion. *Cf. Union Camp Corp.*, 963 F.Supp. at 1213. It has also failed to provide a basis for invoking this Court's residual jurisdiction under Section 1581(i) via an amended complaint. Plaintiff's Motion is **DENIED.**

/s/ Stephen Alexander Vaden
Stephen Alexander Vaden, Judge

Dated: September 20, 2021
New York, New York

[4] In addition to jurisdiction under Section 1581(a) to protest Customs's actions, Plaintiff may also have had resort to Section 1581(c) to contest Commerce's determination of the duty rate if Plaintiff instead wished to challenge that decision. *See Acquisition 362 I*, 517 F.Supp.3d at 1324.

# Form 19. Certificate of Compliance with Type-Volume Limitations

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

**Case Number:** 2022-1161

**Short Case Caption:** Acquisition 362, LLC v. United States

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 7,200 words.
- ☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- ☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 03/04/2022

Signature: /s/Heather L. Marx

Name: Heather L. Marx

# Form 30 – Certificate of Service

FORM 30. Certificate of Service

Form 30
July 2020

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF SERVICE

**Case Number** 2022-1161

**Short Case Caption** Acquisition 362, LLC v. United States

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on ________________

by ☑ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☑ Other: CM/ECF filing

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Hardeep Kaur Josan | United States Department of Justice<br>26 Federal Plaza, Suite 326, New York, NY 10278<br>hardeep.k.josan@usdoj.gov |
| Justin R. Miller | United States Department of Justice<br>26 Federal Plaza, Suite 326, New York, NY 10278<br>justin.r.miller@usdoj.gov |
| Aimee Lee | United States Department of Justice<br>26 Federal Plaza, Suite 326, New York, NY 10278<br>aimee.lee@usdoj.gov |
| Paula S. Smith | United States Customs and Border Protection<br>26 Federal Plaza, Suite 258, New York, NY 10278<br>paula.smith@cpb.dhs.gov |
| | |

☐ Additional pages attached.

Date: 03/04/2022

Signature: /s/ Heather L. Marx

Name: Heather L. Marx