2022-1161

IN THE

**United States Court of Appeals
for the Federal Circuit**

ACQUISITION 362, LLC DBA STRATEGIC IMPORT SUPPLY,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade in
Case No. 1:20-cv-03762, Slip Op. No. 21-120 (Sept. 20, 2021)
Judge Stephen Alexander Vaden

# SUPPLEMENTAL BRIEF OF PLAINTIFF-APPELLANT ACQUISITION 362, LLC

Heather L. Marx
Thomas G. Wallrich
**Cozen O'Connor**
33 South Sixth Street
Suite 3800
Minneapolis, MN 55402
(612) 260-9000

*Counsel for Plaintiff-Appellant Acquisition 362, LLC dba Strategic Import Supply*

December 6, 2022

Pursuant to the Court's November 8, 2022 Order, Appellant Acquisition 362, LLC dba Strategic Import Supply (A362) ("Appellant") submits this supplemental brief in response to the Court's questions.

## INTRODUCTION

As oral argument so aptly highlighted, the guidance provided to importers and this Court alike with respect to suspension and liquidation of entries subject to administrative review, at best, lacks clarity. In this case in particular what complicated the issue is that the manufacturer of the entries at issue, Shandong Zhongyi Rubber Co., Ltd. ("Shandong Zhongyi"), is the same entity and uses the same manufacturer codes as Dongying Zhongyi Rubber Co., Ltd. ("Dongying Zhongyi"). Having undergone a name change and attempting to minimize potential redundancies, Shandong Zhongyi withdrew its request for administrative review – an action that should have had no impact on its entries since Dongying Zhongyi remained part of the Administrative Review. Instead, this withdrawal somehow triggered an internal process at U.S. Customs and Border Protection ("Customs") to liquidate Shandong Zhongyi's entries, robbing A362 of a clear path to its owed refund through the conventional methods of a typical protest while Dongying Zhongyi remained part of the administrative review process.

The understandable confusion over the convoluted process and the factual anomalies should not, however, distract from the broader point that A362 timely

protested by filing its protests within 180 days of the Amended Final Results and that the Court of International Trade ("CIT") erred when it failed to apply the appropriate jurisdictional standard established by 19 U.S.C. §1514(c)(3)(B) and 19 C.F.R. §174.12(e)(2).

Further, if the Court finds that the CIT lacked jurisdiction to hear A362's claims under §1581(a), then it follows that §1581(a) is manifestly inadequate and residual jurisdiction under §1581(i) is proper.

## RESPONSES PURSUANT TO COURT ORDER

**(1) Whether the August 10, 2015, Countervailing Duty (CVD) Order suspended liquidation of imports subject to the administrative review for the period of review from January 1, 2016 to December 31, 2016 (2016 POR).**

Upon review of the information provided by Defendant, Appellant agrees that the Countervailing Duty ("CVD") Order suspended liquidation of imports subject to the administrative review for the period of review from January 1, 2016 to December 31, 2016 ("2016 POR"). *See* Exh. A to U.S. Supp. Brief, Message No. 5226310 (Aug. 14, 2015). This suspension was then extended after Commerce published a Notice of Initiation of Administrative Review and directed Customs to continue suspension of liquidation of entries subject to the POR. *See* Exh. B to U.S. Supp. Brief, Message No. 7305313 (Nov. 1, 2017).

After Shandong Zhongyi withdrew its request for administrative review, Commerce directed Customs to liquidate those entries and assess countervailing

duties at the cash deposit rate required at the time of entry. *See* Exh. C to U.S. Supp. Brief, Message No. 8269302 (Sept. 26, 2018). However, no such directive was issued in regard to the liquidation of entries from Dongying Zhongyi. *See id.*

It is at *this* point in the journey where there is an extreme disconnect as to what exactly A362 was legally and procedurally able to do. And even today – with the benefit of hindsight – A362 is at a loss at how this could have been handled differently given these particular factual circumstances.

Premature, overly broad, or indefinite protests do not constitute a proper basis for invoking CIT jurisdiction. *See, e.g., Lowa, Ltd. v. United States*, 5 C.I.T. 81, 86, 561 F.Supp. 441, 445 (1983), *aff'd* 724 F.2d 121 (Fed. Cir. 1984) (holding that a premature protest "may not serve as a basis for invoking this court's jurisdiction under 28 U.S.C. §1581(a)"); *United States v. E.H. Bailey & Co*., 32 C.C.P.A. 89, 98 (1944) (ruling that "[a] protest is not sufficient ... which alleges merely that the amount of duties assessed by the collector is erroneous," because "[s]uch a blanket form, if sufficient, could be used in every case"). But that is the only type of protest A362 could have filed in the 180 days following liquidation of entries from Shandong Zhongyi. The 30.61% rate A362 paid upon entry of the merchandise in 2016 was the same rate that remained in place as of the ordered liquidation that occurred between October and November 2018, and that rate continued to be the rate in place throughout the duration of the 180-day period following liquidation.

Appx29-32. The 180-day period following the 2018 liquidation expired in May 2019. It was not until a month later, in June 2019, that the Amended Final Results were issued, and the CVD rate was cut in half. *See* 84 FR 28011 (June 17, 2019). Then, and only then (and more specifically when Customs refused to implement the requisite refund), did A362 have something it could actually protest.

The government argues that had A362 believed that Customs applied the wrong rate in liquidating its entries, A362's sole option would have been to protest Customs' liquidations on the basis that were premature given the ongoing nature of the administrative review. But that myopic position the ignores three things.

First, at the time of liquidation, A362 had no basis on which to base its belief that Customs applied the wrong rate in liquidating its entries, as it was ordered to do for the Shandong Zhongyi entries. The 30.61% rate remained in place until the issuance of the Amended Final Results, when the rate was essentially cut in half.

Second, and as A362 repeatedly confirmed for Customs when it filed its protests, Shandong Zhongyi and Dongying Zhongyi are *the same company*. Appx.89. Dongying Zhongyi was, at all times, subject to the administrative review, and liquidation of its entries was suspended; however, the entries from Shandong Zhongyi were separated out and were not subject to suspension. *Compare* Exh. B to U.S. Supp. Brief, Message No. 7305313 (Nov. 1, 2017) *with* Exh. C to U.S. Supp. Brief, Message No. 8269302 (Sept. 26, 2018). From A362's perspective, liquidation

of entries from Shandong Zhongyi was not premature when Customs was directed to liquidate, nor did A362 have a substantive reason to protest when the rate had not yet changed from the rate paid at the time of entry. Nothing was amiss, caused concern, or raised the need for a protest until after the issuance of the Amended Final Results *and* after Customs refused to implement the requisite refunds on the majority of A362's entries.

Finally, and most importantly, there remained a separate statutory mechanism by which A362 could protest – and it did do so timely. As discussed in detail in Appellant's principal briefing, an importer is not limited to solely protesting pursuant to a liquidation. 19 U.S.C. §1514(c)(3) provides:

> (3) A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—
>
> (A) date of liquidation or reliquidation, ***or***
>
> (B) in circumstances where subparagraph (A) is inapplicable, ***the date of the decision as to which protest is made.***

19 U.S.C. §1514(c)(3) (emphasis added). And in turn, 19 C.F.R. §174.12(e) allows protests to be made "within 180 days of a decision relating to an entry made on or after December 18, 2004, after any of the following… (1) The date of notice of liquidation or reliquidation, or the date of liquidation or reliquidation, as determined under §§159.9 or 159.10 of this chapter; ***or*** (2) ***The date of the decision, involving***

***neither a liquidation nor reliquidation, as to which the protest is made...***" 19 C.F.R. §174.12(e) (emphasis supplied).

So, when Customs decided not to act on Commerce's instruction in regard to the refund attached to A362's entries, A362 protested within 180 days of when Customs first had authority and instruction to issue the refunds. These jurisdictional avenues (19 U.S.C. §1514(c)(3)(B) and 19 C.F.R. §174.12(e)(2)) are separate and distinct from the avenues regarding a protest to liquidation, and they are the mechanism through which A362 timely protested and through which the CIT had jurisdiction over A362's claims.

**(2) Whether any other order suspended such liquidation during the administrative review for the 2016 POR. If so, the government shall provide a copy of any such order and indicate whether the order was a public document.**

A362 is unaware of any such order and affirmatively states the government is best equipped to confirm this information.

**(3) Whether any statutory provision or regulation provides for automatic suspension of liquidation upon the initiation of an administrative review of a CVD order.**

To answer the Court's question directly, no singular statutory provision or regulation provides for automatic suspension of liquidation upon the initiation of an administrative review of a CVD order. Despite this, the CIT has held that a holistic reading of §1673e(a) together with §1675 means that the suspension of liquidation of an entry must remain in effect throughout an administrative review by Commerce.

*See Am. Power Pull Corp. v. United States*, 121 F. Supp. 3d 1296, 1301 (Ct. Int'l Trade 2015), citing *Ambassador Div. of Florsheim Shoe v. United States,* 748 F.2d 1560, 1565 (Fed.Cir.1984) (holding suspension of liquidation impliedly required by statute during administrative review of countervailing duty order to effectuate retrospective system of duty assessment).

**(4) Whether the liquidation of plaintiff's entries on October 19, 2018, October 26, 2018, and November 9, 2018, violated any order suspending liquidation.**

As to Shandong Zhongyi, no.

**(5) Whether plaintiff's entries were subject to the administrative review for the 2016 POR.**

As indicated in the record, entries for Dongying Zhongyi were at all times subject to the administrative review for the 2016 POR. *See* Exh. B to U.S. Supp. Brief, Message No. 7305313 (Nov. 1, 2017); Exh. C to U.S. Supp. Brief, Message No. 8269302 (Sept. 26, 2018). Despite the fact that Dongying Zhongyi and Shandong Zhongyi are the same company and use the same manufacturer code, Shandong Zhongyi was specifically removed from the administrative review for the 2016 POR, allowing for liquidation of its entries. *See* Exh. C to U.S. Supp. Brief, Message No. 8269302 (Sept. 26, 2018).

**6) If liquidation of plaintiff's entries was not suspended during the 2016 POR, whether plaintiff could have sought suspension from some agency, such as Commerce or Customs, having authority to grant it, whether on the ground that a pending administrative review might affect the proper duty or on any other ground. If so, indicate what statutory provision or regulation provides such authority and when the agency (*e.g.,* Commerce or Customs) would be obligated to grant such a request and when it would have discretion to grant it.**

A362 is unaware of any separate agency, statute, or other mechanism under which it could have sought suspension of the Shandong Zhongyi entries at issue.

**(7) Explain the relationship between Acquisition 362, LLC, Shandong Zhongyi Rubber Co., Ltd., and Dongying Zhongyi Rubber Co., Ltd. Explain the effect and relevance of Shandong Zhongyi Rubber Co., Ltd. withdrawing from the review due to its relationship with Dongying Zhongyi Rubber Co., Ltd. See J.A. 3 ("Plaintiff submits [Shandong Zhongyi Rubber Co., Ltd] withdrew its request for review because it was a non-selected company under review under an alternate company name, Dongying Zhongyi Rubber Co., Ltd.").**

Acquisition 362, LLC is an importer and entity wholly separate from either Shandong Zhongyi or Dongying Zhongyi. Appx.30. Shandong Zhongyi and Dongying Zhongyi are one in the same company, interchangeably using manufacturer codes CNSHAZHODON, CNDONZHOSHA, CNSHAZHO3DON and CNZHORUB1HAN. Appx.89.

Practically speaking, Shandong Zhongyi withdrawing from the review should have had no effect because Dongying Zhongyi – the very same entity – was still under Administrative Review. Instead, it resulted in entries from the same manufacturer, from the same POR being subject to competing liquidation instructions.

**(8) Whether Shandong Zhongyi Rubber Co., Ltd. withdrawing its individual request for administrative review affected when and why plaintiff's entries were liquidated.**

A362 cannot speak to why Customs chose to liquidate the entries when it did.

## CONCLUSION

Whether it is due to the perplexing nature of administrative reviews, imprecise guidance from Commerce, or the unique factual circumstances of this case, the CIT completely ignored the proper jurisdictional basis under which the CIT should hear A362's claims. Plaintiff-Appellant Acquisition 362, LLC respectfully requests this Court enter judgment in its favor and reverse the CIT's dismissal for lack of subject matter jurisdiction, remanding this case for a substantive determination before the CIT.

Respectfully submitted,

Dated: December 6, 2022

**COZEN O'CONNOR**

By: /s/ Heather L. Marx .
Heather L. Marx
Thomas G. Wallrich
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
Telephone: 612-260-9000
Fax: 612-260-9084
hmarx@cozen.com
twallrich@cozen.com

*Attorneys for Plaintiff-Appellant Acquisition 362 dba Strategic Import Supply*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure and the Court's November 8, 2022 Order, Appellant's counsel certifies that this brief complies with the Court's type-volume limitation rules. This brief was printed in Times New Roman font at 14 points. This brief contains a total of 9 pages, which is within the 15-page limit.

/s/ Heather L. Marx