# United States Court of Appeals for the Federal Circuit

---

**ACQUISITION 362, LLC, DBA STRATEGIC IMPORT SUPPLY,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1161

---

Appeal from the United States Court of International Trade in No. 1:20-cv-03762-SAV, Judge Stephen A. Vaden.

---

Decided: February 6, 2023

---

HEATHER MARX, Cozen O'Connor, Minneapolis, MN, argued for plaintiff-appellant. Also represented by THOMAS G. WALLRICH.

HARDEEP KAUR JOSAN, International Trade Field Office, United States Department of Justice, New York, NY, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, AIMEE LEE, PATRICIA M. MCCARTHY, JUSTIN REINHART MILLER; PAULA S. SMITH, Office of the Assistant Chief Counsel, International Trade Litigation, United States Bureau of Customs and Border Protection, United

States Department of Homeland Security, Washington, DC.

---

Before DYK, TARANTO, and HUGHES, *Circuit Judges*.

DYK, *Circuit Judge*.

Acquisition 362, LLC dba Strategic Import Supply ("Acquisition") appeals a decision of the United States Court of International Trade ("CIT") dismissing Acquisition's complaint concerning protests to decisions of the U.S. Customs and Border Protection ("Customs") as to certain entries of passenger vehicle and light truck tires. We conclude that the CIT lacked subject matter jurisdiction. Acquisition could have asserted jurisdiction by timely protesting the liquidations of these entries under 19 U.S.C. § 1514, on the theory that Customs had improperly liquidated them because the manufacturer of Acquisition's goods was participating in an administrative review. Because Acquisition did not timely protest the liquidations, the CIT lacked jurisdiction under both 28 U.S.C. § 1581(a) and (i). We affirm.

BACKGROUND

In 2016, Acquisition imported several entries of passenger vehicle and light truck tires from the People's Republic of China manufactured by Shandong Zhongyi Rubber Co., Ltd. ("Shandong Zhongyi"). Because importation of tires manufactured by Shandong Zhongyi was subject to a 2015 countervailing duty order ("*CVD Order*") from the Department of Commerce ("Commerce"),[1] Acquisition

---

[1] *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Affirmative Antidumping Duty Determination and*

deposited estimated countervailing duties for the entries at a rate of 30.61%, the "all-others" rate established in the *CVD Order*. As discussed in detail below, normally, if an administrative review were instituted, liquidation of such entries (the final assessment of the duties owed) would continue to be suspended until Commerce in the administrative review retroactively determined the final countervailing duty rate for the relevant entries imported during the period.

At the request of various interested parties, including Shandong Zhongyi, Commerce initiated an administrative review of the *CVD Order* covering entries imported during the period of review from January 1, 2016, through December 31, 2016 ("Annual Review"). That period covered all of the entries at issue here.[2] Upon initiation of the Annual Review, Commerce instructed Customs to continue suspending liquidation of entries subject to the review but to liquidate entries not subject to the review at the estimated deposit rate.[3] Liquidation of Acquisition's entries was initially suspended because Shandong Zhongyi-manufactured products were subject to the Annual Review.

---

*Antidumping Duty Order; and Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 80 Fed. Reg. 47902, 47907 (Aug. 10, 2015) ("*CVD Order*"). The 2015 *CVD Order* specifically directed Customs to suspend liquidation of entries covered by the order. *Id.*; *see also* Gov't's Suppl. Br. Ex. A, Message No. 5226310 (Aug. 14, 2015).

[2] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 82 Fed. Reg. 48051, 48058 (Oct. 16, 2017) ("*Initiation Notice*").

[3] *See* Gov't's Suppl. Br. Ex. B, Message No. 7305313 (Nov. 1, 2017), at ¶¶ 2–3.

However, before the Annual Review was completed, Shandong Zhongyi withdrew from the review.[4] Accordingly, Commerce ordered Customs to liquidate Shandong Zhongyi-manufactured entries imported in 2016, because Commerce concluded that those entries were no longer covered by the Annual Review and would not be entitled to a countervailing duty rate different from the estimated deposit rate.[5] The entries at issue in this appeal were liquidated according to Commerce's instructions in October and November of 2018, with final countervailing duties assessed at the 30.61% deposit rate. Importers that wish to challenge the liquidation of their entries can do so by filing a protest within 180 days of the liquidation. 19 U.S.C. § 1514(a)(5), (c)(3)(A). Acquisition did not protest the liquidation of these entries within 180 days.

Ultimately, in 2019, Commerce adopted final results of the Annual Review ("*Amended Final Results*"), setting the final countervailing duty rates for the 2016 entries of the companies under review.[6] The *Amended Final Results*

---

[4] *See Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China: Preliminary Results of Countervailing Duty Administrative Review and Rescission, in Part*, 83 Fed. Reg. 45611, 45612 (Sept. 10, 2018) ("*Withdrawal Notice*").

[5] *See* Gov't's Suppl. Br. Ex. C, Message No. 8269302 (Sept. 26, 2018), at ¶ 1.

[6] *See Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Amended Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 28011 (June 17, 2019) ("*Amended Final Results*"). The *Amended Final Results* corrected a clerical error in the previously published final results of the investigation. *See id.* at 28011 n.

included an individual rate for certain companies as well as a rate of 15.56% for the remaining "non-selected companies under review."[7] Commerce instructed Customs to liquidate the entries that had remained suspended during the Annual Review and to assess final countervailing duties pursuant to the rates determined in the *Amended Final Results*.[8] For purposes of this appeal, we assume that if Acquisition's entries had remained unliquidated, Acquisition would have been entitled to and would have received the 15.56% rate applicable to entries of other parties under review but not selected for the determination of individual rates.

In December 2019, following the publication of the *Amended Final Results*, Acquisition filed protests to Customs' failure to refund the difference between the 30.61% rate it had deposited and the 15.56% "non-selected companies under review" rate determined in the *Amended Final Results*. Acquisition argued that the 15.56% rate applied because the manufacturer, Shandong Zhongyi, which withdrew from the Annual Review, is the same company as Dongying Zhongyi Rubber Co., Ltd., which remained in the Annual Review and is named as a company entitled to the "non-selected companies under review" rate.[9] Acquisition urged that its protests were timely because they were

---

1 (citing *Countervailing Duty Order on Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 17382 (April 25, 2019) ("*Final Results*")).

[7] *See Amended Final Results*, 84 Fed. Reg. at 28011–12.

[8] *See* Gov't's Suppl. Br. Ex. D, Message No. 9184301 (July 3, 2019).

[9] *See Final Results*, 84 Fed. Reg. at 17384.

brought within 180 days of the *Amended Final Results*.[10] Customs denied the protests as untimely because they were filed more than 180 days after the liquidations of the relevant entries, without deciding whether Shandong Zhongyi and Dongying Zhongyi were the same entity.

Following the denial of its protests, Acquisition brought this action at the CIT challenging the denial of the protests. The CIT dismissed the complaint for lack of subject matter jurisdiction because Acquisition did not file timely protests of the liquidations of the entries pursuant to 19 U.S.C. § 1514. Acquisition then moved for reconsideration and leave to amend its complaint, arguing in the alternative that it should be given leave to amend its complaint to assert jurisdiction under § 1581(i). That provision gives the CIT jurisdiction over claims that could not have been brought under another subsection of § 1581 or for which any remedy under another subsection would be manifestly inadequate. *See Sunpreme Inc. v. United States*, 892 F.3d 1186, 1191 (Fed. Cir. 2018). The CIT denied the motion as futile. This appeal followed.

Following oral argument on November 2, 2022, we ordered supplemental briefing to clarify whether the liquidation of Acquisition's entries had been suspended at the time

---

[10] Before the CIT, Acquisition argued its protests were timely because they were brought within 180 days of the message to Customs implementing the *Amended Final Results*. On appeal, Acquisition argues that because the protests were brought within 180 days of the *Amended Final Results*, they would necessarily have been brought within 180 days of any "protestable decision made by [Customs]" after the *Amended Final Results*, without specifying when exactly that decision occurred. Appellant's Br. 18.

they were liquidated.[11] Supplemental briefing was completed on December 6, 2022. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

---

[11] The supplemental briefing order directed the government to answer eight questions, and Acquisition to respond to the government's brief. The questions were:

> (1) Whether the August 10, 2015, Countervailing Duty (CVD) Order suspended liquidation of imports subject to the administrative review for the period of review from January 1, 2016, to December 31, 2016 (2016 POR).
>
> (2) Whether any other order suspended such liquidation during the administrative review for the 2016 POR. If so, the government shall provide a copy of any such order and indicate whether the order was a public document.
>
> (3) Whether any statutory provision or regulation provides for automatic suspension of liquidation upon the initiation of an administrative review of a CVD order.
>
> (4) Whether the liquidation of plaintiff's entries on October 19, 2018, October 26, 2018, and November 9, 2018, violated any order suspending liquidation.
>
> (5) Whether plaintiff's entries were subject to the administrative review for the 2016 POR.
>
> (6) If liquidation of plaintiff's entries was not suspended during the 2016 POR, whether plaintiff could have sought suspension from some agency, such as Commerce or Customs, having authority to grant it, whether on the ground that a pending

## DISCUSSION

### I

Before turning to the merits, we note that Commerce's failure in its orders and initial brief to clearly set out the provisions governing suspension of liquidation in the countervailing duty context in general, and in this case in particular, created confusion that necessitated supplemental

---

> administrative review might affect the proper duty or on any other ground. If so, indicate what statutory provision or regulation provides such authority and when the agency (*e.g.*, Commerce or Customs) would be obligated to grant such a request and when it would have discretion to grant it.
>
> (7) Explain the relationship between Acquisition 362, LLC, Shandong Zhongyi Rubber Co., Ltd., and Dongying Zhongyi Rubber Co., Ltd. Explain the effect and relevance of Shandong Zhongyi Rubber Co., Ltd. withdrawing from the review due to its relationship with Dongying Zhongyi Rubber Co., Ltd. *See* J.A. 3 ("Plaintiff submits [Shandong Zhongyi Rubber Co., Ltd] withdrew its request for review because it was a non-selected company under review under an alternate company name, Dongying Zhongyi Rubber Co., Ltd.").
>
> (8) Whether Shandong Zhongyi Rubber Co., Ltd. withdrawing its individual request for administrative review affected when and why plaintiff's entries were liquidated.

Suppl. Br. Order, *Acquisition 362, LLC v. United States*, No. 2022-1161, Docket No. 32 (Nov. 8, 2022) (modifications in original) (citation omitted).

briefing to resolve questions that should have been straightforward. Commerce's theory is that the 2015 *CVD Order* suspended liquidation of entries after its issuance and that the institution of the Annual Review in the 2017 *Initiation Notice* continued that suspension as to entries within the scope of the review. Thereafter, specific messages to Customs continued the suspension of liquidation during the Annual Review for companies under review, and, in 2018, lifted the suspension with respect to Acquisition's entries following Shandong Zhongyi's withdrawal from the Annual Review. None of this was apparent from Commerce's brief. In its initial brief, Commerce failed to cite or discuss the *Initiation Notice*, *Withdrawal Notice*, or any of the relevant messages instructing Customs to liquidate specific entries and suspend liquidation of others. In the future, we expect Commerce will be both more specific and complete than it was initially about the sequence of government and party actions leading to the challenges presented to the CIT and on appeal.

## II

Turning to the merits of the case, we review de novo a dismissal by the CIT for lack of subject matter jurisdiction. *Carbon Activated Corp. v. United States*, 791 F.3d 1312, 1314 (Fed. Cir. 2015).

Countervailing duties are imposed when Commerce determines another country is providing "a countervailable subsidy with respect to the manufacture, production, or export" of merchandise imported into the United States. 19 U.S.C. § 1671(a)(1). When merchandise is subject to a countervailing duty order, the liability to pay countervailing duties accrues upon entry into the United States, but the actual amount of liability is determined later:

> [T]he United States uses a "retrospective" assessment system under which final liability for antidumping and countervailing duties is determined

> after merchandise is imported. Generally, the amount of duties to be assessed is determined in a review of the order covering a discrete period of time. If a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the time merchandise was entered.

19 C.F.R. § 351.212(a). The "final computation or ascertainment of duties," including countervailing duties, on entries of such merchandise is known as the "liquidation" of those entries. *Id.* § 159.1; *see also* 19 U.S.C. § 1500(d). To facilitate this retrospective assessment system, a countervailing duty order (here, the 2015 *CVD Order*) suspends the liquidation of entries covered by the order until such time as the final countervailing duty rate is determined. *See* 19 U.S.C. § 1671d(c).

At least once a year, if an interested party requests it, Commerce is required to review the countervailing duty order for a given retrospective period (known as an administrative review, periodic review, or annual review). *See* 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.213(e)(2). Pursuant to its regulations, Commerce only reviews the countervailing duty rate for merchandise "covered by the request." 19 C.F.R. § 351.212(c)(2). If a review is not timely requested, Commerce "without additional notice" will instruct Customs to liquidate entries at the cash deposit rate collected at the time of entry. *Id.* § 351.212(c)(1), (c)(2). For merchandise covered by a request for review, Commerce will continue suspending liquidation until the final countervailing duty rate is determined in the review. *See Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed. Cir. 1984).

Upon the publication of the final results of an administrative review, Commerce will lift the suspension of

liquidation for the entries covered by the review and instruct Customs to liquidate those entries at the countervailing duty rate determined in the review. *See* 19 U.S.C. § 1675(a)(1); 19 C.F.R. § 351.212(b)(2). An importer will have to pay any shortfall if the final countervailing duty rate is determined to be higher than the cash deposit rate and will be entitled to a refund if the final rate is lower than the cash deposit rate. *See* 19 C.F.R. § 351.212(e). If the final rate is the same as the cash deposit rate, no further payments are required upon liquidation, and the cash deposit becomes the final countervailing duty.

Suspending liquidation pending the determination of the final countervailing duties that ultimately will be assessed is essential to the operation of the retrospective countervailing duty system, because liquidation is the "final computation or ascertainment of duties." 19 C.F.R. § 159.1; *see Ambassador Div. of Florsheim Shoe*, 748 F.2d at 1562. Parties have a limited window of 180 days to protest a liquidation. 19 U.S.C. § 1514(a)(5), (c)(3)(A). We have explained: "[A]ll liquidations, whether legal or not, are subject to the timely protest requirement. Without a timely protest, all liquidations become final and conclusive under 19 U.S.C. § 1514." *Juice Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995) (citation omitted). Suspending liquidation until an administrative review concludes gives Commerce and future tribunals the benefit of applying the post-review, final countervailing duty rate when entries are ultimately liquidated.

When entries are improperly liquidated, an importer has a remedy—to protest the liquidation under § 1514. In *Carbon Activated Corp.*, the appellant-importer discovered after the 180-day protest window had expired that its entries had been erroneously liquidated in contravention of a suspension order. 791 F.3d at 1314. We held that the importer could have earlier determined that the entries had been liquidated and "could have pursued a remedy under

§ 1514 by protesting those erroneous liquidations." *Id.* at 1316. Accordingly, although the entries would have been entitled to a later-determined duty rate lower than the one at which they were liquidated, we concluded that the importer could have asserted CIT jurisdiction under 28 U.S.C. § 1581(a) by timely protesting the premature liquidations under § 1514, and that it had no further remedy. *Id.* at 1316–17.

III

Though Acquisition alleges that its goods were manufactured by Shandong Zhongyi, which withdrew from the Annual Review, it argues it was entitled to the "non-selected company under review" rate in the *Amended Final Results*. That is so, it argues, because Shandong Zhongyi is in fact identical to Dongying Zhongyi, which did not withdraw from the Annual Review and was determined to be entitled to that rate. Under these circumstances, Acquisition urges that it had no basis to protest until after the *Amended Final Results* were published, more than 180 days after the liquidations.

Acquisition contends that the CIT had jurisdiction over this refund suit. Acquisition's theory is untenable. First, no statute or regulation has been called to our attention that authorizes or requires a refund of duties where they have been finally determined by liquidation, and the statute is quite clear that liquidation of an entry finally establishes the duties unless a protest to the liquidation is filed. *See* § 1514(a); *see also* 19 C.F.R. § 159.1. The only way Acquisition can obtain CIT jurisdiction under § 1581(a) over a claim for a refund is if it can bring itself within one of the provisions of § 1514(a).

Second, in an attempt to demonstrate that its protests fell under § 1514(a)(2), as protests to the "rate and amount

of duties chargeable,"[12] and were timely, Acquisition contends that it is not protesting the liquidations themselves and could not have done so. Instead, according to Acquisition, this is a "circumstance[] where [the dates of liquidation are] inapplicable," § 1514(c)(3)(B),[13] and the 180-day deadline for filing protests was triggered by Customs' decision to deny Acquisition's refund request, not by the liquidations themselves. *See also* 19 C.F.R. § 174.12(e).

This is not so. In general, duties are finally determined by liquidation. The date of liquidation is the applicable date under § 1514(c)(3) for filing a protest to the rate or amount of those duties. There is no other "date of the decision as to which protest is made." § 1514(c)(3)(B). Accordingly, a claim for a refund to duties assessed at liquidation must be filed within 180 days of liquidation, pursuant to § 1514(c)(3)(A).

Acquisition's theory can only work if the dates of liquidation are "inapplicable," that is, if Acquisition could not

---

[12] As relevant here, § 1514(a) provides that: "[D]ecisions of the Customs Service . . . as to— . . . (2) the classification and rate and amount of duties chargeable; [or] . . . (5) the liquidation or reliquidation of an entry . . . ; shall be final and conclusive . . . unless a protest is filed . . . ."

[13] Section 1514(c)(3) provides that:

> A protest of a decision, order, or finding described in subsection (a) shall be filed with the Customs Service within 180 days after but not before—
>
> (A) date of liquidation or reliquidation, or
>
> (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

timely challenge the liquidations. Acquisition's contention that until the results of the Annual Review were published it was without a remedy to challenge the liquidation of its entries is not correct. If entries are improperly liquidated, importers can challenge the legality of the liquidations by timely filing a protest to the liquidation under § 1514(a)(5) even if the duty on the entries has not yet been finally determined. This was the exact situation in *Carbon Activated Corp.*, 791 F.3d at 1316. A protest to the premature liquidation of the entries would not have been either "a sham" or "premature." Appellant's Br. 14. The protest would not have been to the refusal to grant a refund, but to the premature liquidation of the entries.

To be sure, the nominal manufacturer of Acquisition's entries was no longer a party to the Annual Review. But in Acquisition's view, that same entity was still a party to the review under a different name. Under this theory, the suspension of liquidation of Acquisition's entries should have continued. Acquisition could thus have protested the liquidation as having been improper. If it is true, as Acquisition contends, that it was entitled to the countervailing duty rate assigned to Dongying Zhongyi because Dongying Zhongyi was the manufacturer of Acquisition's imports and a party to the Annual Review, Acquisition would have been equally entitled to the suspension of liquidation of Dongying Zhongyi-manufactured entries during the pendency of the Annual Review. Since Acquisition had a remedy to challenge the liquidations of its entries within 180 days, the statutory language it cites in an attempt to establish a different timeframe is inapplicable. Acquisition's protests were untimely, and the CIT lacked jurisdiction under § 1581(a).

IV

In its motion for reconsideration, Acquisition sought leave to amend its complaint to assert jurisdiction under

the residual jurisdictional provision, 28 U.S.C. § 1581(i). Jurisdiction under § 1581(i) is appropriate only if there is no jurisdiction under another subsection of § 1581, or if the remedy under another subsection "would be manifestly inadequate." *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (Fed. Cir. 2022) (citation omitted). Because Acquisition could have obtained an adequate remedy under § 1581(a) by timely filing a protest of the allegedly premature liquidations, it cannot resort to § 1581(i). Accordingly, the proposed amendment to the complaint would be futile.[14]

## CONCLUSION

Acquisition could have asserted jurisdiction under 28 U.S.C. § 1581(a) by filing timely protests of the liquidation of its entries. Because its protests were untimely, the CIT correctly dismissed for lack of jurisdiction.

**AFFIRMED**

---

[14] In its reconsideration motion, Acquisition cited another protest that Customs had granted in part for an entry of Shandong Zhongyi-manufactured goods, applying a countervailing duty rate of 15.53%. *See* J.A. 74–75, 95. But that protest was timely because it was filed within 180 days of the liquidation of the entry, unlike the protests at issue in this appeal.